(53 N. W. Rep 173.)

---

NORTHERN DAKOTA ELEVATOR COMPANY *vs.* CLARK & SMART, AND McDERMOTT, ASSIGNEE.

Opinion filed June 20th, 1892.

**Confusion of Goods—Preferances—Right to Pursue in Hands of Third Party.**

> Where the property of one is received by another, this, of itself, does not entitle the owner to priority of payment out of the general assets of the one receiving the property. To recover his property, the owner must be able to trace and identify it in some form. When it is mingled indistinguishably with the mass of property of the one receiving it, or when, as in the case of money, it is paid out by him, the right to pursue it is lost, because identification is impospossible. Mere enrichment of the estate or extinguishment of debts with the property received will not make the owner thereof a preferred creditor.

Appeal from the District Court, Griggs County; *Rose*, J.

Action by the Northern Dakota Elevator Company against George Clark and others to recover certain money claimed to be

in the hands of one of defendants as assignee of Clark & Smart. Judgment for plaintiff. Defendants appeal.

Reversed.

*David Bartlett*, for appellants.

Owners seeking to follow their property or its proceeds, must trace it into defendant's possession, *Whelley* v. *Foy*, 6 Johns. 34; *Van Allen* v. *Bank*, 52 N. Y. 1; *Bank* v. *Ins. Co.* 104 U. S. 54; *Kip* v. *Bank*, 10 Johns 63; *Bank* v. *King*, 57 Pa. St. 202; *Cook* v. *Tullis*, 18 Wall. 332; *Schuler* v. *Bank*, 27 Fed. Rep. 424. To impress a trust character upon funds which an agent has misapplied it is incumbent upon the principal to clearly trace such funds into the hands of the party against whom relief is sought. *Commercial Nat. Bank* v. *Armstrong*, 39 Fed. Rep. 684; *Illinois, Trust & Savings Bank* v. *First Nat. Bank*, 15 Fed. Rep. 858; *Bank of Commerce* v. *Russell*, 2 Dill. 215; Storys, Eq. Jur. 1259; *Edson* v. *Angel*, 25 N. W. Rep. 307; Appeal of Hopkins Exr. 9 At. Rep. 867; *Cavin* v. *Gleason*, 11 N. E. Rep. 504.

*Edgar W. Camp*, for respondent.

If the property can be traced into the estate of the defaulting agent or trustee, this is sufficient. *National Bank* v. *Ins. Co.* 104 U. S. 54; *Van Alen* v. *Am. Nat. Bank*, 52 N. Y. 1; *People v. City Bank of Rochester*, 96 N. Y. 32; *Peak* v. *Ellicott*, 1 Pac. Rep. 499. The defendants having used respondents money in their business, having benefited their estate by such use a trust attaches to that estate which came to McDermott under the assignment. *Peak* v. *Ellicott*, 30 Kan. 156; S. C. 1 Pac. R. 499; *McLeod* v. *Evans*, 28 N. W. Rep. 173; S. C. 66 Wis. 406; *People* v. *City Bank of Rochester*, 96 N. Y. 35; *Nurse* v. *Satterlee*, 46 N. W. Rep. 1102; *Farmers etc. Bank* v. *Milling Co.* 47 N. W. Rep. 402; *Independent Dist.* v. *King*, 45 N. W. Rep. 908; *Davenport Plow Co.* v. *Lamp*, 45 N. W. Rep. 1049; *Importers Bank* v. *Peters*, 25 N. E. Rep. 319.

CORLISS, C. J. By this proceeding the plaintiff is seeking to follow its money, claimed to be in the hands of the defendant McDermott, as assignee of Clark & Smart. It is insisted by the

defendant McDermott that this money never reached the possession of Clark & Smart, and that, if it did, it had become so mingled with their general assets that it could no longer be traced and identified, either in its original or in a changed form, at the time their property passed to him as their assignee. The facts would seem to support both of these contentions. Clark & Smith were located at Cooperstown, N. D., engaged in banking business, and acted from the opening of the wheat season in 1889 to January 26th, 1891, as paying agents for the plaintiff at that place. As such agents they cashed wheat tickets or checks issued by the plaintiff in buying wheat. The arrangement between plaintiff and them was that they were to furnish all currency necessary to cash these wheat tickets, and were to reimburse themselves by drafts on the plaintiff. Business was carried on under this arrangement until January 26th, 1891, when Clark & Smart made an assignment to defendant McDermott for the benefit of their creditors. At that time the account between the plaintiff and Clark & Smart disclosed a balance of $275.77 in favor of plaintiff. There was a contest in the trial court, and also in this court, over the question whether the simple relation of debtor and creditor existed between the parties, or whether the arrangement between them, in connection with their acts thereunder, created a special relation of a fiduciary character between them. We will assume the latter for the purposes of this case. Still we are unable to sustain the judgment of the court, which gave the plaintiff priority of payment out of the general assets in the hands of the assignee. On January 19th, 1891, there was a balance in favor of the plaintiff of $111.60. Between that time and the date of the assignment, January 26th, 1891, Clark & Smart paid out for the plaintiff in payment of wheat tickets the sum of $335.83. This would have left no funds of the plaintiff on hand, had it not been for a draft for $500, drawn on the plaintiff on January 19th. But no part of the proceeds of this draft ever came to the possession of Clark & Smart. The draft was drawn payable to the order of H. P. Smart, and the proceeds thereof went to his individual

credit in the Citizens' National Bank of Fargo.    It is only on the assumption that the proceeds of this draft came to the hands of Clark & Smart that it is at all possible to show any money of the plaintiff in the control of Clark & Smart at the time of the assignment, even giving to the plaintiff the benefit of its theory that a fiduciary relation, and not that of debtor and creditor, existed; for, but for the proceeds of this draft, the balance of account would have been against the plaintiff.    It is true that Clark & Smart are doubtless chargeable with liability for the amount of this draft, but the plaintiff, to recover, certainly must follow the proceeds of it into the hands of Clark & Smart in some form. But we prefer to put our decision on a broader ground.    The theory on which alone plaintiff can secure priority of payment out of the funds in the hands of the assignee is that the identical money can be traced in some form from plaintiff to Clark & Smart, and that it was still susceptible of identification at the time of the assignment.    That this could not be done seems clear to us.    The proceeds of the draft never went into a separate fund. If they can be regarded as having ever been in the hands of Clark & Smart, they were immediately turned over to Mr. Smart, and used by him individually, and charged up to him individually on the firm books.    But it is claimed that the proceeds of this draft went to enrich the estate of Clark & Smart, and that, therefore, the plaintiff is entitled to priority of payment. Authorities are cited to sustain this view.    Some of them do support it.    They stand on no principle, and are opposed to a much stronger array of decisions.    The plaintiff is seeking to recover its property in the possession of the defendant McDermott, but it is undisputed that it cannot identify any particular portion of the assets in the hands of such defendant as being its property.    Neither can it trace such property into any particular fund.    The very most that can be claimed is that the plaintiff's property has gone into the general mass of the property owned by the assignors prior to the assignment.    But after its receipts by them it is no longer possible to trace it.    It must have been paid out by them, as only $3.96

in cash was found on hand by the assignee. We see no principle on which the plaintiff can insist upon priority of payment out of the general assets in the hands of the assignee. The rule governing this class of cases is very simple; the only difficulty is in applying it. If one has not consented to part with his property and take the responsibility of another for the payment of an equivalent therefor, he may follow his property so long as he can trace it. He has not agreed to part with the title. He has not agreed to accept in lieu thereof the personal responsibility of another. The law will not force him into a relation to which he has never assented. He may follow his property, but he must be able to identify it in some form.

It has been supposed by some courts that the decision in *Knatchbull* v. *Hallett*, 13 Ch. Div. 696; has greatly modified the rule as it existed prior to this decision. In that case a solictor sold bonds of his client, and deposited the proceeds in his general account with a banker. Against this account he drew checks for his own personal purposes, and he also deposited, from time to time, his own funds therein. At all times the balance in his favor exceeded the amount of the proceeds of the bonds of his client. It was held that the client might follow his money into this account, and have a charge thereon to the extent of the money received from the sale of the bonds. We find in this decision no extention of the rule allowing property to be followed and recovered. The client's money had gone into a special fund, and, as the account had never been reduced below the amount of his money therein, it was entirely proper to hold that the solicitor had drawn out his own funds from time to time, and not those of the client. The law allows the owner to follow his property not only in its original form, but also in any form into which it may have been changed, providing identification is possible. A new doctrine has sprung up in recent days. It goes upon the theory of the enrichment of the estate out of which priority is sought to be secured. This would entitle every general creditor to preference, and therefore there would be no preferences as between

such creditors and the person whose property, without his consent, had enriched the estate. Reasoning along this line, we would have a preference in favor of general creditors as against one who by a tort had caused a liability against his estate without enriching it, as in case of an assault and battery, libel, slander, seduction or malicious prosecution. But no such preference exists; nor can it exist. The Wisconsin decisions sustaining this rule have been made by a divided court, in every instance three of the judges favoring the rule and two of them dissenting. See· *McLeod* v. *Evans,* (Wis.) 28 N. W. Rep. 173, 214; *Bowers* v. *Evans,* (Wis.) 36 N. W. Rep. 631; *Francis* v. *Evans,* (Wis.) 33 N. W. Rep. 93. The case of *People* v. *City Bank of Rochester,* 96 N. Y. 32; is distinguished in a later case,—*Cavin* v. *Gleason,* (N. Y. App.) 11 N. E. Rep. 504,—the court saying of it that it was not claimed in that case that the money sought to be followed had not in some form gone into the hands of the receiver. In this latter case the right to follow money was held to be lost by the payment of that money to a third person, it being no longer possible to trace it, except in the hands of one who, having taken it in the ordinary course of business, could not be compelled to refund it. Certainly the money cannot be said to be in any form in the hands of one who has paid it out. That the New York court of appeals is in no manner committed to this new doctrine invoked in this case is apparent in its language in the case in 11 N. E. Rep. 504: "The trust fund, with the single exception mentioned, was misappropriated by White to the payment of his private debts prior to the assignment. It cannot be traced into the property in the hands of the assignee, for the plain reason that it is shown to have gone .to the creditors of White in satisfaction of their debts. The court below seem to have proceeded upon a supposed equity springing from the circumstances that by the application of the fund to the payment of White's creditors the assigned estate was relieved *pro tanto* from debts which otherwise would have been charged upon it, and that thereby the remaining creditors, if entitled to distribution without regard to the petitioner's claim, will be benefited.

We think this is quite too vague an equity for judicial cognizance, and we find no case justifying relief upon such a circumstance. In a very general sense, all creditors of an insolvent may be supposed to have contributed to the assets which constituted the residuum of his estate." This new rule has sprung from a misconception of the decision in *Knatchbull* v. *Hallett, supra.* This case merely decides that, if the holder of the money makes an investment with it, as by depositing it in a bank, thus establishing between him and the bank the relation of creditor and debtor, the owner of the money may follow it in this new form, because he can trace it. His money is in this particular investment. The fact that other money has been placed in the same investment, *i. e.,* the same account, cannot affect his rights, and it is an entirely rational presumption that, whenever the depositor draws for his own use funds from this account, he intends to draw his own money, leaving the other funds untouched. But it is impossible to trace the money when, as in this case, it has been paid out by the one who has it in his possession. If the plaintiff's money went into the hands of the assignors, it was paid out before the assignment, except as to $3.96; this being all the cash found on hand by the assignee. As to this $3.96, it might be that the plaintiff's position would be sound if it were able to show that any of the last $500 had ever come into the possession of the assignors. It may be that, in the view of the established custom of remitting by draft collections made at a distance, it is essential to the protection of the rights of persons owning papers forwarded for collection merely that the cash with which the collecting bank carries on its business, and with which the money collected is mingled, should be regarded as a specific fund, and that all payments made by the bank thereout should be regarded as having been made out of its own cash, and not with the cash collected. A remittance of the specific money collected is probably never made. See, as sustaining this view, *Bank* v. *Weems,* (Tex. Sup.) 6 S. W. Rep. 802. This is a very important question, and we prefer not to decide it without the aid of full argument. Our

views are supported by what we regard as the line of authorities most consonant with sound principle. *Cavin* v. *Gleason,* (N. Y. App.) 11 N. E. Rep. 504; Appeal of Hopkin's Ex'r., (Pa. Sup.) 9 Atl. Rep. 867; *Edson* v. *Angell,* (Mich.) 25 N. W. Rep. 307; *Bank* v. *Armstrong,* 39 Fed. Rep. 684; *Bank* v. *Dowd,* 38 Fed. Rep. 172; 2 Story, Eq. Jur. § § 1258, 1259; 2 Pom. Eq. Jur. § § 1051, 1058; *Bank* v. *Goetz,* (Ill. Sup.) 27 N. E. Rep 907; *Englar* v. *Offutt,* 16 Atl. Rep. 497; 70 Md. 78. The decision in *Bank* v. *Peters,* (N. Y. App.) 25 N. E. Rep. 319; is not in conflict with the case in 11 N. E. Rep. 504. It belongs to the class of cases of which *Knatchbull* v. *Hallett,* is one, where the money has gone into a special fund. The drawers of a draft had deposited it for collection with a bank, which forwarded it to another bank, by which latter bank the collection was made, but no remittance was made before a receiver in insolvency of the former bank was appointed. It was held that the drawer of the draft could recover the money from the collecting bank. It was not a case where the money had been received by the insolvent bank, and mingled with its general funds. The insolvent bank had not received the money at all. The solvent bank had received it, and still was indebted for it to some one. The court very properly held that it was indebted for it to the true owners of the draft, the forwarding bank never having had any title to the draft, but having received it merely for collection.

The judgment of the District Court is reversed. All concur.