ANHEUSER-BUSCH BREWING ASSOCIATION, APPELLANT, V. CREIGHTON MORRIS, ASSIGNEE OF THE FARMERS & MERCHANTS BANK OF HUMBOLDT, APPELLEE.

FILED JANUARY 3, 1893.    No. 5114.

1. **Banks:** VOLUNTARY ASSIGNMENTS: PREFERRED CREDITORS. Where a bank collects money for another, it holds the same as trustee of the owner, and on the making of an assignment by the bank for the benefit of its creditors the trust character still adheres to the fund in the hands of the assignee, and the owner is entitled to have his claim allowed by the county court as a preferred claim.

2. ——: ——: ——: WAIVER OF RIGHT TO PREFERRED CLAIMS. In such case, where the owner files his claim with the county judge in the regular way, which is allowed like that of an ordinary creditor, no preference being given, from which allowance no appeal is taken, and he afterwards accepts from the assignee two dividends declared, he waives his right to afterwards insist upon the payment of his claim in full.

3. **Voluntary Assignments:** PREFERRED CLAIMS: COUNTY JUDGE. It is the duty of the county judge, at the same time he audits and allows a claim against an assigned estate, to determine whether or not it is entitled to preference, and if he finds that it is, to order the same paid as a preferred claim. His decision is, in effect, a judgment, which is conclusive, unless appealed from.

APPEAL from the district court of Richardson county. Heard below before APPELGET, J.

*Story & Story,* for appellant:

The plaintiff's money was a trust fund. It can be followed into the assignee's hands, and under sec. 24, ch. 6, Comp. Stats., should be paid in full as a preferred claim. *(National Bank v. Insurance Co.,* 104 U. S., 54; *Harrison v. Smith,* 83 Mo., 210; *Peak v. Ellicott,* 30 Kan., 156; *Englar v. Offutt,* 70 Md., 78; *Farmers & Mechanics Bank v. King,* 57 Pa. St., 202; *McLeod v. Evans,* 28 N. W. Rep. [Wis.], 173.)

*J. R. Wilhite* and *Edwin Falloon, contra.*

NORVAL J.

On July 1, 1889, the Farmers & Merchants Bank of Humboldt made an assignment for the benefit of its creditors. Subsequently, Creighton Morris was elected by the creditors of the bank as assignee of the assigned estate, and qualified as such. Claims have been allowed by the county court of Richardson county against the estate aggregating more than double the appraised value of the assigned property. On September 13, 1889, appellant filed its claim as a creditor of said assigned estate to the amount of $827.83, for moneys collected by the bank for appellant and not remitted, which was allowed by the county court October 17, 1889, as an ordinary claim, no preference being given. Subsequently, on October 28, 1889, a ten per cent dividend was declared, and appellant, as a creditor, took the ten per cent upon his claim allowed. Afterwards, on May 13, 1890, a six per cent dividend was declared, and appellant accepted its *pro rata* share. On the 6th day of June, 1891, appellant filed with the county court its verified petition alleging that its claim was for trust moneys and praying that the same should be paid in full as a preferred claim, which application was denied on July 27, 1891, and on the same

day a five per cent dividend was declared, but appellant declined to accept its *pro rata* share and appealed to the district court, where the decision of the county court was affirmed.

It is argued by the appellant, in effect, that the money collected for it by the bank was a trust fund in the hands of the latter, and that the making of the assignment did not divest the money of its trust character. There can be no doubt of the soundness of the proposition stated. This money collected by the bank did not belong to it, but to appellant, and it did not pass by the assignment to the assignee as a part of the assets of the bank. The assignee took the money subject to the trust in favor of the owner, and appellant was entitled under the provisions of the assignment law to have the same paid as a preferred claim against the estate, unless he has waived his right to such preference. The decisions cited in the brief of appellant fully sustain this conclusion, and we have been unable to find any in conflict therewith. (*McLeod v. Evans*, 28 N. W. Rep. [Wis.], 173; *Farmers & Mechanics Bank v. King*, 57 Pa. St., 202; *Peak v. Ellicott*, 30 Kan., 156; *People v. City Bank of Rochester*, 96 N. Y., 32; *Cragie v. Hadley*, 99 Id., 131; *National Bank v. Ins. Co.*, 104 U. S., 54.)

The decision in *Wilson v. Coburn*, 35 Neb., 530, is clearly distinguishable from the case at bar. There an insolvent bank received a deposit of a sum of money from one Henry Wilson, and soon thereafter the bank made an assignment for the benefit of its creditors. The depositor filed with the county judge his claim, and a petition praying that he be adjudged a preferred creditor, and for an order for the payment of his claim in full. It was ruled that the fact that the bank, within the knowledge of its officers, received the depositor's money under circumstances which amounted to a fraud upon him, was not of itself sufficient to entitle him to a preference over other creditors

from the funds of the bank in the hands of the assignee. The depositing of the money with the bank under the circumstances stated created the relation of debtor and creditor, and as the sum deposited had gone into and was mingled with the general funds of the bank, so as not to be capable of identification, or of being distinguished from the other assets of the bank in the assignee's hands, the depositor had no right to preference. In the case before us the transaction between the appellant and the assignor did not create the relation of a debtor and creditor, but the money collected constituted a trust fund in the hands of the bank for the benefit of the owner, and the assignment did not have the effect to divest it of such trust. The assignee stands in the place of the bank, and by the assignment he acquired no greater right to the money than the bank possessed.

Has appellant waived its right to insist upon the payment of its claim in full by having the same allowed as an ordinary debt against the estate, and by accepting two dividends from the assignee? It is plain that the answer must be in the affirmative.

Section 16 of the assignment law provides, among other things, that the county court shall fix a time within which claims against the assigned estate shall be filed.

Section 17 of the same act declares that "On the day following the day fixed under the provisions of the preceding section all uncontested claims shall, by the county judge, be allowed and entered of record, with the amounts thereof, in a book to be provided and kept for that purpose. Upon all contested claims the county judge shall order pleadings, as nearly as practicable like those in ordinary civil actions in said court, to be summarily made up, and thereupon said cause shall proceed in said court as in ordinary civil actions therein; but no such cause shall be continued for a longer time in the aggregate than sixty days from the day so fixed."

Section 18 provides that "Judgment in said action shall be that such claim or some amount thereof be allowed, or that the same be disallowed, or that the assignee have and recover from the person making the claim a certain amount. If the claim shall be allowed, judgment for costs shall be adjudged against the party or parties contesting the same. If the claim be allowed in part only, the court adjudicating the same shall apportion the costs or adjudge them as may be just. If the claim be wholly disallowed, or the assignee recover judgment, costs shall be adjudged against the claimant, but in no case shall the costs be paid out of the assigned estate except as in this act otherwise provided. In such cause the claimant shall be named as plaintiff, and the contestant or contestants as defendant. Judgment in favor of the assignee or for costs shall be collected as in other cases. Whenever any contested claim shall be finally allowed, or so much thereof as shall be finally allowed, shall be entered of record in like manner as other claims."

Section 19 provides that "no petition in error shall be allowed from the judgment of the county court upon a contested claim, but either party may appeal therefrom as in other cases."

Sections 22, 23, and 24 read as follows :

"Sec. 22. At the expiration of three months from the date of the inventory and appraisement, or sooner if, and as often as, the assignee shall be in the possession of sufficient funds, the county court shall order a distribution of all moneys in the assignee's hands, fixing the amount in dollars and cents to be paid to each person entitled thereto, and thereupon the assignee and his sureties shall become liable to such person therefor absolutely. The court may also enforce obedience to such order by the assignee by attachment for contempt, and may commit him to the common jail of the county, or any other suitable place of confinement and safe keeping until he shall comply therewith.

"Sec. 23. As soon as the entire estate shall have been converted into money the county court shall make a like order for the final distribution thereof, which shall have the same effect and may be enforced in like manner as the order mentioned in the last preceding section.

"Sec. 24. Moneys coming into the hands of the assignee shall be distributed in the following manner: First—To the payment of fees and allowances of the assignee, county judge, clerks, sheriff, and officers. Second—To the payment of any public tax or assessment charged against the assignor or assignors or his or their property. Third—To the payment of preferred claims in full. Fourth—The balance shall be divided among the creditors so that the amount paid to each shall bear the same relation to the whole sum to be so divided that the amount of such creditor's claim shall bear to the aggregate amount of all the claims proven."

The statute authorizes and requires the county judge to pass upon claims filed against an assigned estate. Manifestly it is his duty at the time he passes upon and audits a claim to investigate and determine whether it is entitled to preference, and if he finds that it is, to allow the same as a preferred claim. His decision entered of record is in effect a judgment, which is final and conclusive upon all parties, unless an appeal is taken therefrom to the district court in the manner and within the time indicated by section 19 above quoted. (2 Black, Judgments, sec. 641; *Eppright v. Kauffman*, 1 S. W. Rep. [Mo.], 736.)

Appellant insists that the proper time for the county judge to determine whether the owner of a claim is entitled to preference is when the order of distribution is made. It will be conceded that in a suit to foreclose several mortgages, unless the priority of liens is determined when the decree is rendered, each lien-holder will share alike in the proceeds of the sale of the mortgaged premises. The time to determine in such a case the priority of liens clearly is

not after the sale of property.    Applying the same rule to
the settlement of insolvent estates we conclude that the
status of a claim, whether it shall be preferred or not,
must be fixed and determined by the county judge at the
time the same is passed on and allowed by him, and not
when he makes an order for the distribution of the money
in the hands of the assignee.    This view is strengthened
by the reading of section 24, copied above, which declares
the manner in which money belonging to an assigned es-
tate shall be distributed.    By the third subdivision of the
section preferred claims are to be paid in full, and by the
next subdivision the balance of the assets is to be divided
among the creditors *pro rata.*    From this it is plain that the
status of the owner of each claim, whether entitled to a pref-
erence or not, must be judicially determined before there
can be a distribution of the assets among the creditors of the
assignor.    The appellant's claim was allowed as an ordi-
nary claim, and by failing to appeal therefrom, and by ac-
cepting as a creditor the two dividends declared, it waived
its right to insist upon the payment of its claim in full as
a preferred creditor.    In reaching this conclusion we have
not overlooked the decision in *McLeod v. Evans, supra,*
wherein a contrary doctrine is stated.    In view of our
statutory provisions we do not regard that case as authority
here.    It follows that, as the decision of the county court
and of the district court are in harmony with the views that
we have expressed, the judgments of both courts must be

AFFIRMED.

THE other judges concur.