STATE OF NEBRASKA, APPELLEE, V. BANK OF COMMERCE
OF GRAND ISLAND ET AL., APPELLEES, IMPLEADED
WITH HERSCHEL A. EDWARD ET AL., APPELLANTS.

FILED JANUARY 23, 1901.   No. 10,058.

1. **Preferred Creditor:** MONEY DUE ON COLLECTION ACCOUNT. Money
collected by a bank for another on notes or drafts and retained
is held in trust for the owner, and does not become a part of
the assets of the bank, and if the bank thereafter becomes
insolvent, and a receiver is appointed, the one for whom the
collection is made is a preferred creditor.

2. **Trust Funds:** CONVERSION: PROCEEDS: RIGHTS OF BENEFICIARY:
INNOCENT HOLDER. Where trust funds are wrongfully converted
the beneficiary is entitled to the funds, or the proceeds thereof,
so long as he can definitely trace them, until they reach the
hands of an innocent holder.

3. ———: ———: MIXING: PAYMENT FROM COMMON FUND: PRESUMP-
TION. Where trust money has been wrongfully commingled by
a trustee with his own, and he makes payment from the com-
mon fund, it will be presumed that he paid out his own, and
not trust money.

4. **Beneficiary:** EXTENT OF PREFERENCE. The claim of a beneficiary
for trust money may be preferred to the extent of the cash
found among the assets of an insolvent trustee at the time of
his failure, where it is not affirmatively shown that the cash
assets are not part of the trust fund. Rule applied.

5. **Appeal:** ADMISSION OF TESTIMONY: REVIEW. In a cause brought
to this court on appeal, the rulings of the trial court on the
admission of testimony can not be reviewed.

APPEAL from the district court for Hall county. Heard
below before THOMPSON, J. *Affirmed.*

*Constantine J. Smyth, Attorney General,* for the state.

*H. E. Clifford* and *Charles G. Ryan,* for appellees.

*James H. McIntosh, John L. Webster, W. H. Thompson*
and *W. H. Platt, contra.*

NORVAL, C. J.

On January 9, 1896, the Bank of Commerce of Grand
Island was doing a banking business in the city named.

On that day one Dell Thompson presented to the cashier of said bank a certain draft or check, in the sum of $2,000, and as a part of the transaction the cashier of the bank executed and delivered to him a paper, in words following:

"Grand Island, Neb., January 9, 1896.

"Received of Dell Thompson for collection sight draft on Piqua Natl Bank, Piqua, Ohio, drawn by Odd Fellows M. A. & A. Asso. in favor of Ida M. Spencer, also policy No. 21622 of Odd Fellows M. A. & A. Asso., both of above amt. $2000.

"O. J. Smith, *Cash.*"

Thompson also testified that at the time he delivered the draft to the bank, through its cashier, he exhibited to the latter a power of attorney executed by Ida M. Spencer, empowering him, Thompson, to collect, receive and receipt for said draft. Said instrument further recited that said Thompson was given absolute authority in the premises, as fully as the maker could have, and further authorized him to pay out of the proceeds of the draft certain debts of herself and her late husband. He further testifies that he wished the cashier to pay him the amount of the draft in full, but that the cashier refused to do so, offering only to receive it as a collection, and the receipt quoted was the result of this proposal. At the same time, Thompson, at the suggestion of the cashier, executed and presented a check, signed by him as "trustee," for the sum of $20, for which amount a draft was made out by the bank and by him sent to Mrs. Spencer, and by her used. Thompson testifies that Smith, the cashier of the bank, requested him to make this check as it was made, saying that he would carry the check as "cash" until the proceeds of the draft arrived, when the amount so advanced by the bank could be deducted therefrom. On the same day an account was opened by the bank on its books, in the name of Dell Thompson, trustee, the account credited with the face of the draft, and the draft then became a cash asset of the

bank and was entered upon the books as cash, and deb-
ited with the $20 represented by the check of Thompson.
Thompson denies that there was ever any agreement or
understanding between him and the cashier, or other.
officer of the bank, that an account should be opened in
his name as trustee.  Smith is deceased, and the testi-
mony of Thompson in that regard is uncontradicted by
any direct evidence.  Two other small checks, amount-
ing to some $5, were afterwards drawn by Thompson, to
cover the cost of collection of the draft and other ex-
pense.  This draft was by the bank forwarded to its reg-
ular correspondent at Omaha, the Union National Bank
of Omaha, and it received credit for the amount there
on the books of the latter bank.  Between this time and
January 14th following the Union National Bank shipped
to the Commercial Bank the sum of $2,000 in currency;
but it is not disclosed by the record whether this sum
was or was not the avails of this draft.  Nothing further
than what has been recited has been disclosed as to the
subsequent history of the draft, except that a few days
after this it was returned by the Omaha bank, owing to
a defective indorsement, which was, however, corrected,
and the draft returned to the Omaha Bank, and with
it a letter in which Smith states, among other things,
"she [referring to Mrs. Spencer] is in very destitute cir-
cumstances and Mr. Thompson being a friend of hers
advanced her a little money for her immediate needs
until this draft could be collected.  *  *  *  Would like
credit for it if you can do so, as we have paid out part
of the money."  Mrs. Spencer died on January 12, and
Thompson was appointed administrator of her estate.
The bank failed on January 20, following, and a receiver
was duly appointed.  At the time of its failure, as dis-
closed by the record, it had on hands in cash, new over-
drafts, new bills receivable, and cash in other banks,
something over $5,000, which were new assets received
by it after the date it received said draft from Thompson.
The latter, as such administrator, duly filed with the re-

ceiver of the bank a claim for the amount of this draft, less the sums advanced on it by the bank, demanding that the same be by the receiver made a preferred claim, and the receiver refusing so to do, the former petitioned the court below to have it declared a preferred claim. His prayer was granted, and the receiver appeals to this court.

It is a well recognized principle in this state that money collected by a bank for another on notes or drafts is held in trust for the owner who is a preferred creditor in case the bank goes into liquidation, and such money does not become a part of the assets of the bank or pass to the receiver of such bank. *Anheuser-Busch Brewing Ass'n v. Morris*, 36 Nebr., 31; *Capital Nat. Bank v. Coldwater Nat. Bank*, 49 Nebr., 786; *State v. Midland State Bank*, 52 Nebr., 1.

It is urged that this case falls within the principles announced by this court in *State v. Bank of Commerce*, 54 Nebr., 725, 728, and for that reason the judgment must be reversed. There the law was stated as follows: "But we think the correct doctrine, and the one supported by the decided weight of authority, is that the beneficiary of a trust fund, solely because of the character of his claim, is not entitled to the payment of the same in full, to the exclusion of other creditors, out of the assets of the insolvent trustee's estate; that when trust funds are wrongfully converted, the beneficiary is entitled to the funds themselves, or to the proceeds of the investment of them, so long as he can definitely trace them and before they reach the hands of an innocent holder; that when a trustee wrongfully commingles trust money with his own and makes payments from the common fund, it will be presumed that he paid out his own money, and not the trust money; that it will be presumed the cash assets on hand when the trustee failed and the receiver took possession of his estate were part of the trust money; that when trust funds are wrongfully converted, and not only do not remain in the hands of, and

are not found among the assets of, the wrong-doer, but are actually traced out of his hands and shown to have been dissipated, then the beneficiary of the trust fund is not entitled to have his claim allowed as a preferred one against the estate of the insolvent wrong-doer. If the trust property consisted of money, the claim of the beneficiary of the trust fund may be preferred to the claims of other creditors, to the extent of the cash found among the assets of the insolvent trustee at the time of his failure, unless it affirmatively appears that such cash assets were not part of the trust fund." And in that case the controverted claim was allowed as a preferred one only to the extent of the cash on hand. It is contended, however, that the power of attorney presented by Thompson to Smith at the time the draft was left with the bank is a general one, and not special, and under it he had the power to deposit the proceeds of this draft, if he thought proper, it following from the evidence that he did in fact deposit the draft, an account being open on the books of the bank on the strength thereof, thus making him a general and not a preferred creditor of the bank. To this we reply, the power is special and not general, but that the extent of the latter becomes unimportant, when the record discloses ample evidence on which to base the finding of the court that the draft was accepted by the bank for collection, and not otherwise. It is contended that the avails of this draft were not traced into the assets of the bank, but that in fact the bank received credit for the amount thereof by the Omaha bank, which credit went to liquidate an indebtedness of the Bank of Commerce to the Omaha bank. It is true that the evidence shows a credit by the Omaha bank, but it is also shown that the sum of $2,000 in currency was sent the Bank of Commerce by the Omaha bank a very short time after the receipt of this draft, and there is no evidence to establish the fact that this currency was not the proceeds of the draft; and in the absence of evidence to the contrary, the presumption is that it is such proceeds, and by this evidence is upheld

the finding of the court that the bank received the proceeds of the draft.

It is contended that, although it should be found that Thompson had no authority under his power from Mrs. Spencer to open a general account, as her agent, with the bank, yet she, by accepting the sums of money advanced by the bank, and he by beginning this suit, ratified such acts. As before stated, there is ample evidence from which to support the finding of the court below that this draft was never received by the bank as a deposit, but for collection only, and that the bank merely advanced the sums of money mentioned on the security of this draft; and that being the case, no question of ratification can arise.

It is obvious that the lower court was right in its findings and judgment; that the evidence discloses a sufficient fund in the hands of the bank at the time of its failure to pay this draft, and that it will be presumed, in the absence of a showing to the contrary, that the proceeds of this draft were a part of this fund, and that the judgment making this a preferred claim against said bank, to the extent of the cash on hand at the time of such failure, is right. The lien of such claim extends to the cash on hand at the time of such failure, including, however, the amount of deposit in other banks, and to no other assets of the bank. We make this observation for the reason that the judgment below may be construed to extend the lien of Thompson's claim to other assets of the bank than the cash items alluded to.

This being a proceeding on appeal, and not in error, the objection that the lower court erred in admitting the evidence of Thompson as to what took place between him and Smith, the cashier of the bank, Smith being now deceased, can not be considered. However, the court has carefully examined the evidence, and is of the opinion that the judgment is based upon sufficient competent evidence, aside from that of Thompson, to sustain the judgment.

AFFIRMED.