# WIDMAN v. KELLOGG et al.

(39 L.R.A.(N.S.) 563, 133 N. W. 1020.)

**Banks — insolvency — taking money for draft.**

1. This appeal is before this court on the judgment roll alone. The findings, among other things, are to the effect that appellant was required, as a local agent of the Great Northern Railway Company and another, to transmit his receipts each day to his principals in St. Paul, and that it was his custom to go to the bank and deposit such receipts, and receive therefor, from the bank, drafts payable to the order of his principals, and forthwith to transmit the same. It was also found that on four days named he followed this custom, and that the drafts so procured and forwarded to St. Paul were dishonored because no funds were on deposit with the correspondent of the local bank with which to pay them; that the officers of the bank knew of his employment and the purpose for which such drafts were obtained. The record contains no findings that he kept any general account or drew any checks on the local bank. *Held* that, in view of this custom and the findings as a whole, the word "deposit" must be construed as indicating the payment into the bank of each day's receipts in exchange for the drafts; and that he stood in relation to the bank as a purchaser for cash of drafts.

**Banks —insolvency —taking money for draft —trust fund.**

2. Section 4660, Rev. Codes 1905, prohibits insolvent state banks from receiving any money, bank bills, notes or currency, bills or drafts; and § 4661 makes any official of an insolvent bank who receives money, etc., guilty of a felony. The defendant bank had been hopelessly insolvent for some time prior to the purchase of the drafts mentioned, and. it had no funds with its correspondent bank out of which they could be paid; and such officials had no reason to anticipate their being honored. *Held*, that such money was received by the bank without consideration, and, in effect, under false pretenses or representations; that thereby a fraud was perpetrated upon appellant, the effect of which was to make the bank a trustee *ex maleficio* of such funds.

Note.—Where a bank sells a draft or check on another bank and receives the currency therefor, knowing or having reason to believe that it is insolvent and that it has not the funds in the bank drawn on to meet such check or draft, it is guilty of a fraud, as shown by a review of the authorities in a note in 10 L.R.A. (N.S.) 928. The purchaser of such draft will be allowed to rescind the purchase and recover the money paid therefor, provided that the other conditions as to following trust funds obtaining in the forum are complied with. The general question of recovery of deposit in insolvent bank is treated in notes in 34 L.R.A. 532, and 86 Am. St. Rep. 800.

**Banks —taking money for draft while insolvent — rights of receiver.**

3. On a receiver being appointed for such bank, in a proceeding under the statute to wind up the affairs of insolvent corporations, he had no greater rights in such funds or moneys than those possessed by the insolvent bank, and succeeded the bank as trustee.

**Banks — taking money for draft while insolvent — priority of claim for.**

4. The fact that the bank closed its doors within four business days after the first of the transactions described, and the next day after the last one, and that money in more than double the amount of the claim of appellant was turned over to the receiver by the bank, and other elements of the findings of the trial court, lead to the conclusion that both the money assets of the bank and those received by the receiver were enhanced by the transactions described.

**Mingling trust funds with those of trustee — presumption as to subsequent payments.**

5. When a trustee mingles trust funds with his own, and subsequently pays out a portion of the commingled funds, it will be presumed that he made his payments from that portion of the fund belonging to himself and retained the funds which did not belong to him; and, except in so far as he may distinguish what is his own, the whole fund will be treated as the trust property.

**Banks — insolvency — trust funds — priority.**

6. The trusteeship of the bank and of the receiver being established, it being conceded that the moneys of appellant were commingled with the funds of the bank, and respondents having failed to show that moneys paid out in the meantime were the original trust funds, and likewise having failed to show that appellant's money was not included in that turned over to the receiver, appellant is entitled to recover.

**Banks — insolvency — trust funds — priority.**

7. When such trust funds are not commingled with any of the assets of the bank, except the cash assets, the preference of appellant is limited to the cash funds of which the receiver took possession, when distinguishable from the other assets of the estate going into his hands.

**Banks — insolvency — preference in assets.**

8. Appellant is entitled to preference to the extent of the moneys turned over to the receiver.

**Banks — insolvency — preference in assets.**

9. The rights of other claimants, if any, to preference, not being before this court, appellant's rights relative to them are not determined, but it is suggested that the ends of justice would be promoted by proceeding on the part of claimants to preference, in such cases, by intervention rather than by independent action against the receiver.

Opinion filed November 18, 1911. Rehearing denied December 19, 1911.

Appeal from District Court, Nelson county; *Templeton, J.*

Action by L. C. Widman against George A. Kellogg, as receiver of the People's State Bank, and another. From a judgment for defendants, plaintiff appeals.

Reversed.

The appellant brought this suit against the defendant Kellogg as receiver of the People's State Bank, and the People's State Bank, a corporation organized under the banking laws of this state, seeking to establish and recover as a preferred claim the sum of $1,074.95. We take the facts from the findings of the trial court, omitting formal matters.

The People's State Bank referred to was between November, 1892, and January 26, 1910, engaged in the general banking business at Lakota. It became insolvent on or prior to August 1, 1909, and so continued until January 26, 1910, when it suspended business, and the state examiner took charge of its assets until March 8, 1910, when the same was turned over to the respondent Kellogg, as receiver, pursuant to an action brought by and through the attorney general, to obtain a judgment of dissolution, pursuant to the provisions of chapter 27, Rev. Codes 1905. The appellant was at all times material the agent of the Great Northern Express Company and the Great Northern Railway Company, corporations under the laws of Minnesota, at Lakota. It was his duty to receive the funds of said corporations, and promptly transmit them to his principals in St. Paul, Minnesota, and it was his custom in transmitting such funds to deposit the same in said People's State Bank and "receive therefor" drafts issued in the name of his respective principals, which he forwarded them by mail. This custom had been continued for some time and was well known to the bank and its officers, as also was his relation to such corporations. Appellant became personally responsible for the funds so remitted, and the drafts received by his principals were charged by them to him, and he is the owner thereof. He did not know, and had no reason to know or believe, prior to January 26, 1910, that said bank was insolvent, but the officers of said bank knew or in the regular performance of their duties ought to have known of its insolvency at all times subsequent to August, 1909. The amounts involved in this action are

drafts purchased by appellant as follows, omitting names of his principals, which are immaterial here:

| | |
|---|---|
| January 21, 1910 | $ 103.20 |
| January 22, 1910 | 119.82 |
| January 22, 1910 | 470.66 |
| January 24, 1910 | 56.44 |
| January 25, 1910 | 324.83 |
| Total | $1074.95 |

All such drafts were drawn on the Security National Bank of Minnesota and transmitted to appellant's employers forthwith, and immediately presented for payment and protested for want of funds. At the time they were drawn and presented the People's State Bank did not have on deposit with its correspondent the funds to meet said drafts, or any of them, and the officers of the People's State Bank, and those issuing such drafts, knew, or in the performance of their duties ought to have known, that fact. The drafts have never been paid. The People's State Bank continued to carry on its business in the usual manner, paying out money on checks and otherwise, receiving deposits and making collections and issuing drafts, and receiving money therefor from the time the first above-mentioned draft was drawn until the night of January 26, 1910. It had on hand in cash on the 21st day of January, 1910, $14,436.88. At the close of business, January 26, 1910, there was on hand cash in the sum of $2,774.08. No part of this latter sum can be identified as the identical money paid by appellant to said bank, or as the proceeds thereof, or of any checks or drafts delivered by him to it, for which said drafts on the Security Bank were issued. It received deposits between the morning of the 21st and the closing of its doors, aggregating over $13,000, and paid out money on checks amounting to over $17,000. Its certificates of deposits increased about $800 during such time. At the time this action was brought the receiver had in his possession approximately $25,000 in money and other assets worth $15,-000 belonging to said People's Bank. It is conceded by respondent that the funds paid for the drafts by appellant were mingled with the general fund of the bank.

Other findings show that the bank at all such times was hopelessly insolvent by reason of the embezzlement of its funds by certain of its officers, and that its true condition had been concealed by them.

Judgment was given against the appellant to the effect that his claim was not entitled to be preferred, and dismissing his action. From such judgment he appeals.

*Frich & Kelly,* for appellant.

*Bangs & Robbins,* for respondents.

SPALDING, Ch. J. (after stating the facts as above). It is claimed by counsel for respondent that the authorities applicable to the facts disclosed in this case are in hopeless conflict; that the ancient rule in equity was that property impressed with a trust, which it is claimed by respondent this is, cannot be reclaimed unless the specific property involved can be fully and specifically identified. It is admitted that several courts have modified this rule in recent years and permitted recovery for such property in certain instances. A vast number of authorities are cited on the subject and an attempt is made to trace the course of such determinations, but it is also claimed that the trend of the latest authorities has been toward the ancient rule, and that in several states which at one time departed from it the courts have overruled such decisions and returned to the old doctrine. Among such is the state of Wisconsin. We shall not follow all the holdings of these courts, nor show wherein they have disagreed, to any considerable extent, but shall pass upon this case with reference to some leading authorities which we think clearly give the better reasons. Many of the authorities cited as sustaining the decision of the trial court related to collections made by banks which became insolvent before remitting or paying them to the owner. In so far as banks in such cases are in charge of a trust fund, such cases are analogous to the case at bar, but the only authorities we find directly in point—that is to say, upon the purchase of drafts from an insolvent bank—support the contention of the appellant.

We note that the brief of appellant treats the transaction in this case as the purchase of a draft, while that of the respondent is based on the theory that it was a general deposit. The word "deposit," as

we have shown, is used in the findings. This, however, must be read in connection with the facts disclosed, and, when so read, we think it is not used to indicate that the appellant kept a deposit account with the insolvent bank. It rather means that he took his day's receipts for each of his principals to the bank and in exchange therefor procured drafts. They were deposited in the sense that they went into the bank, but not for the purpose of checking against them, or for being placed to his credit.

The findings are clearly to the effect that, when he took his day's receipts to the bank, he procured a draft for the exact amount turned over to the bank, and this draft he immediately transmitted to his principal. The transaction is, therefore, one of taking a sum of money to the bank and exchanging it for a draft, and we consider the finding to be to that effect, notwithstanding the use of the word "deposit." What we have said in explanation of our interpretation of the word "deposit," as used in the findings of the trial court, is said with a view to making our opinion clear, and to prevent its being extended to cover cases in which the facts are different.

Under § 4660, Rev. Codes 1905, every insolvent bank association is prohibited from receiving any deposit or any money or bank bills or notes or currency or other notes, bills, or drafts. And under § 4661 any official of such bank who knowingly receives or accepts, or who is accessory, or permits or connives at the receiving or accepting, any such deposits, is made guilty of a felony. It is clear that in taking the money of the appellant in exchange for drafts on the Minnesota Bank, when the insolvent bank had no funds out of which such drafts were payable, the insolvent bank and its officers represented to the appellant, in effect, that they had money on deposit with the Security Bank to meet the drafts, when in fact they had no such deposit, and, on the contrary, as shown by the findings, their account in that bank was overdrawn in a great sum. They had no reason to anticipate that their correspondent would honor such drafts. They received money without consideration, and under false pretenses or representations.

They thereby perpetrated a fraud upon appellant, and the bank acquired no title to his money, and, of course, could convey no better title than it possessed to the receiver. His rights in the premises are identically the same as those of the insolvent bank. The effect of this

22 N. D.—26.

is that the bank became a trustee of the funds of appellant *ex maleficio*, and the receiver succeeded the bank as such trustee. Rev. Codes 1905, § 5711; Anheuser-Busch Brewing Asso. v. Morris, 36 Neb. 31, 53 N. W. 1037; Cady v. South Omaha Nat. Bank, 49 Neb. 125, 68 N. W. 358; Pennell v. Deffell, 4 De. G. M. & G. 372, L. R. 1 Eq. 579, 23 L. J. Ch. N. S. 115, 18 Jur. 273, 1 Week. Rep. 499; Re Hallett, L. R. 13 Ch. Div. 719, 49 L. J. Ch. N. S. 415, 42 L. T. N. S. 421, 28 Week. Rep. 732; Cragie v. Hadley, 99 N. Y. 131, 52 Am. Rep. 9, 1 N. E. 537; Furber v. Dane, 204 Mass. 412, 27 L.R.A.(N.S.) 808, 90 N. E. 859; Richardson v. New Orleans Debenture Redemption Co. 52 L.R.A. 67, 42 C. C. A. 619, 102 Fed. 780; Capital Nat. Bank v. Coldwater Nat. Bank, 49 Neb. 786, 59 Am. St. Rep. 572, 69 N. W. 116; People v. City Bank, 96 N. Y. 32; Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693; Stoller v. Coates, 88 Mo. 515; St. Louis & S. F. R. Co. v. Johnston, 133 U. S. 566, 33 L. ed. 683, 10 Sup. Ct. Rep. 390; Peak v. Ellicott, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499.

This places this case in the same category on principle as the numerous cases which are found in the books, where the fund was originally a trust fund, and renders it unnecessary to determine whether the fact that the funds in question were not the property of the appellant, but were held by him as agent, and so known to be held by the bank, also entitled him to a preference.

The apparent conflict of authorities arises from the ability or inability to trace these funds, and as to the extent of the priority to which the *cestui que trust* is entitled. There can be no doubt of several things; among them, that the cash assets of the insolvent bank were enhanced by the receipt of this money. Neither can there be any doubt that the money turned over to the receiver was more by the amount paid the bank than it would have been had it not been paid the bank. The bank took appellant's money, and the funds in its possession and those turned over to the receiver were to that extent increased. It gave nothing for it; hence there was no increase of liabilities. The time between the issuance of the first draft and the closing of the doors of the bank was only four business days. It is true that the funds in possession of the bank decreased during these four days by the payment of checks drawn on the bank in excess of the deposits, but there was still money on hand to an amount more than double the claim of appellant, and this

went into the hands of the receiver. From this it is clear that under both lines of authorities, those which are to the effect that the assets turned over to the receiver must be enhanced by the appellant's deposit, if it may be called a deposit, as well as those which are to the effect that the assets of the bank must be enhanced, he is entitled to recover. Stoller v. Coates, 88 Mo. 515; Richardson v. New Orleans Debenture Redemption Co. 52 L.R.A. 67, 42 C. C. A. 619, 102 Fed. 780.

It is claimed that the fact that moneys were paid out of the bank between the date of his purchasing the drafts, or at least between the date of the first draft and the receivership, precludes him from recovering, as such moneys may have been his moneys rather than the bank's. We are only considering this question as between this appellant and the bank, and it is established by many authorities that where a trustee mingles trust funds with funds of his own, and subsequently pays out a portion of the commingled fund, it will not be presumed that he paid out moneys which he had no right to disburse, and which did not belong to him, but that, on the contrary, it will be presumed that he made his payments from that portion of the fund belonging to him and retained the funds which did not belong to him, and, except so far as he may distinguish what is his own, the whole fund will be treated as the trust property. While there are some authorities holding that the claimant must prove that the payments were not made from his funds, we think the other rule much more equitable and supported by better weight of authority. Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693; Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; Pennell v. Deffell, 4 De G. M. & G. 372, L. R. 1 Eq. 579, 23 L. J. Ch. N. S. 115, 18 Jur. 273, 1 Week. Rep. 499; Re Hallett, L. R. 13 Ch. Div. 719, 49 L. J. Ch. N. S. 415, 42 L. T. N. S. 421, 28 Week. Rep. 732; Burnham v. Barth, 89 Wis. 362, 62 N. W. 96; State v. Bank of Commerce, 61 Neb. 181, 52 L.R.A. 858, 85 N. W. 43; State v. Bank of Commerce, 54 Neb. 725, 75 N. W. 28; Lincoln v. Morrison (Lincoln Sav. Bank & T. Co. v. Morrison) 64 Neb. 822, 57 L.R.A. 885, 90 N. W. 905; Sherwood v. Central Michigan Sav. Bank, 103 Mich. 109, 61 N. W. 352; Whitcomb v. Carpenter, 132 Iowa, 227, 10 L.R.A.(N.S.) 928, 111 N. W. 825; Peak v. Ellicott, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; Fire & Water Comrs. v. Wilkinson, 110 Mich. 655, 44 L.R.A. 493, 78 N. W. 893; Hyland v. Roe, 111

Wis. 361, 87 Am. St. Rep. 873, 87 N. W. 252; Anderson v. Pacific Bank, 112 Cal. 598, 32 L.R.A. 479, 53 Am. St. Rep. 228, 44 Pac. 1063; Farmers' & T. Bank v. Kimball Mill. Co. 1 S. D. 388, 396, 36 Am. St. Rep. 729, 47 N. W. 402; Hart v. Ten Eyck, 2 Johns. Ch. 62; Davis v. Coburn, 128 Mass. 377; Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L. ed. 785; Shute v. Hinman, 34 Or. 578, 47 L.R.A. 265, 56 Pac. 412, 58 Pac. 882.

And why, we ask, should the bank, or the receiver standing in its stead, be heard to assert as against the rightful owner of moneys that in paying creditors of the bank it paid money that belonged to appellant and which it held in a trust capacity, instead of paying its own money? To hold that the bank may take such a position and maintain it in a court of equity, seeking to do equity, would be to permit the bank to take advantage of its own wrong, to its own benefit, and to the detriment of the innocent party it has injured. One reason of great force for the trustee assuming the burden of proving that he paid out the trust funds instead of his own, and that the trust funds did not pass into the hands of the receiver, is that, in the case of money, the means of knowledge on these subjects would not be possessed by the *cestui que trust,* but that the means of proof of the facts regarding it would ordinarily be wholly within the possession of control of the trustee. This is peculiarly so in the case of a bank. The business of a banking institution is ordinarily done by confidential agents or employees behind a screen and closed doors. Its customers and the public are excluded from its banking room, and have no means of knowing from what fund money is paid or the disposition made of it under any ordinary circumstances. Such knowledge must of necessity be in the sole possession of the trustee. Several of the authorities cited in support of the respondent's position disclose facts rendering the principle materially distinguishable from those governing the case at bar. For instance, in some of them the last payments were made to the bank many months before its failure, and funds were not paid out in the meantime greatly in excess of such payments, and in excess of the receipts of the bank; and under such circumstances as to preclude the possibility of the fund belonging to the depositor having enhanced the assets of the bank or of the assets which were turned over to the receiver.

The bank and its successor, the receiver, being trustees, and it being

conceded by all parties that the moneys of appellant were commingled with the funds of the bank, and the trustees having failed to show that any moneys paid out were the trust funds, and likewise having failed to show that the funds belonging to the appellant were not included in the money turned over to the receiver, it necessarily follows that the judgment of the district court was erroneous.

The foregoing conclusion, however, does not settle the rights of the appellant fully. Much stress has been laid upon the conflict of authorities applicable to this case, and particularly the different rules adopted by the supreme court of Wisconsin and others following the lead of that court. Following the English authority, Re Hallett; L. R. 13 Ch. Div. 719, 49 L. J. Ch. N. S. 415, 42 L. T. N. S. 421, 28 Week. Rep. 732—the supreme court of Wisconsin held in McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214, and certain other cases immediately following that, that the *cestui que trust* might have his money out of any of the assets of the estate of the insolvent. Subsequently, in Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383, and other cases, the Evans Cases were overruled in so far as they permitted recovery from all or any of the assets.

After a careful consideration of authorities on both sides, we are satisfied that the better rule, is, in a case like the instant case, where the funds of the appellant were commingled only with the moneys in the bank, and where there is no finding that they went to enhance any part of the assets except the cash on hand, that the recovery should be limited to the cash funds turned over to the receiver. In the case at bar, they are clearly distinguishable from any of the other assets of the estate received by the receiver. This is in accordance with the Nonotuck Silk Company Case and many other authorities, and seems to be the later rule adopted by most of the courts. It may not be applicable in all cases, because the line between the fund into which the money of the *cestui que trust* went and the other assets may not be clearly distinguished, but it is so in this case. In the Nonotuck Silk Company Case the plaintiff was not permitted to recover principally because no money went into the hands of the assignee, except a few pennies and a $2.50 gold piece. In the case at bar more than twice as much money went into the hands of the receiver as belonged to the appellant, and this occurred only the day after the last payment by appellant to the bank,

and within four banking days after the first payment. Northern Dakota Elevator Co. v. Clark & Smart, 3 N. D. 26, 32, 53 N. W. 175, is relied on as holding that appellant should not recover. We do not so consider it. There is a vital distinction between the facts in the two cases. In that case no part of the proceedings of a draft which was involved ever went into the possession of the bank. It was drawn payable to the order of an individual member of the firm comprising the bank, and placed to his credit in another bank. The plaintiff was in fact indebted to the defendants, instead of being a creditor, so there were no funds in any form in the hands of the banker belonging to the plaintiff, and, of course, no question of trust funds could be involved. The additional fact is also disclosed that only $3.96 of cash was turned over to the assignee of the defendant bankers. What is said therein with reference to the English and Wisconsin authorities is totally irrelevant to the issues before this court at that time, and lastly, in relation to such case, we find that the question now before us was not determined.

Lastly, with reference to this subject we may say that many authorities cited by respondent are where it is shown that the trust fund has been dissipated altogether, leaving nothing to be the subject of the trust. It was held in Pennell v. Deffell, 4 De G. M. & G. 372, L. R. 1 Eq. 579, 23 L. J. Ch. N. S. 115, 18 Jur. 273, 1 Week. Rep. 499, that if a man mingles trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his own. This holding was followed in Re Hallett, supra, and approved. In Burnham v. Barth, 89 Wis. 367, 62 N. W. 96, it is said that where a trustee mingles trust money with his own, any money drawn from the common fund will be deemed to be drawn by the trustee from his own, instead of the trust fund, And in Cragie v. Hadley, 99 N. Y. 131, 52 Am. Rep. 9, 1 N. E. 537, it was held that the rule that one who has been induced to part with his property by the fraud of another, under guise of a contract, may, upon discovery of the fraud, rescind the contract and reclaim the property, unless it has come to the possession of a bona fide holder, is well settled; and that permitting plaintiff to make a deposit when the bank was known by its officers to be insolvent, in reliance upon the supposed solvency of the bank, was a gross fraud upon the plaintiff, and that the latter was entitled to reclaim such deposit or its proceeds, and that such right was not precluded by provisions of the

statute forbidding all preferential payments or transfers by an insolvent bank, and providing for a ratable distribution of its assets, for the reason that the plaintiff did not claim under a transfer from the bank but under his original title; that his relation as creditor ceased when he elected to rescind the contract of deposit; and that neither the creditors nor receiver of the bank had any equity to have the plaintiff's property applied in payment of the obligations of the bank. That was an action brought to recover the proceeds of certain drafts deposited by the plaintiff with a bank in Buffalo.

In Stoller v. Coates, 88 Mo. 515, it is held that where a bank received a draft on deposit to the credit of the depositors, who thereupon drew their check on the bank with the request that it should place the proceeds to the credit of one E., in another bank, its correspondent, and upon doing so the second bank refused to accept it and charge it to the account of the first bank, that the fund remained in the first-named bank, impressed with a trust, and that the relation of general creditor was not created between the depositors and that bank, and that it may be impossible to follow into its diverted use, it is always possible to make it a charge on the estates or assets to the increase or benefit of which it had been appropriated away. In Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693, the Supreme Court of the United States passed upon this question and reviewed a large number of authorities, and held that if a man mixes trust funds with his own, the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own. And it is held that these are established doctrines of equity, and that they apply in every case of a trust relation, and to moneys deposited in a bank account, and the debt thereby created. And the court reviewed and followed Re Hallett, supra.

In Richardson v. New Orleans Debenture Redemption Co. 52 L.R.A. 67, 42 C. C. A. 619, 102 Fed. 780, the circuit court of appeals of the fifth circuit held that a deposit obtained by fraud when a bank is hopelessly insolvent created a trust in favor of the depositor, and can be recovered from a receiver of the company, even if the identical money deposited does not pass into his hands, where the funds received by him are in any event increased by the amount of his deposit. In State v. Bank of Commerce, 61 Neb. 181, 52 L.R.A. 858, 85 N. W. 43, it was

held that trust funds do not become a part of the assets of the bank, and, if a bank becomes insolvent and a receiver is appointed, the owner of the trust funds is made a preferred creditor, and that the beneficiary is entitled to the funds, or the proceeds thereof, so long as he can definitely trace them, until they reach the hands of an innocent holder; and that, when such funds have been wrongfully commingled and payments made by the trustee from the common fund, it will be presumed that such payments were made out of his own money, and not from the trust money; and that the claim of a beneficiary for trust money may be preferred to the extent of the cash found among the assets of the insolvent trustee at the time of his failure. And several other decisions of that court are cited in the opinion, to the same effect.

And in State v. Bank of Commerce, 54 Neb. 725, 75 N. W. 28, it was held that, when such funds are wrongfully commingled with those of the bank and payments made from the common fund, it will be presumed that such payments were made out of the trustee's own money, and not the trust money, and that the cash assets on hand when the trustee failed were part of the trust money; but that, if it is shown that the funds were actually dissipated, the beneficiary cannot have his claim allowed as a preferred one. And the claim in that case was allowed to the extent of the cash on hand at the time of the failure. In St. Louis & S. F. R. Co. v. Johnston, 133 U. S. 566, 33 L. ed. 683, 10 Sup. Ct. Rep. 390, it was held that the accepting of a deposit of trust by a bank irretrievably insolvent constitutes such a fraud as entitled the depositor to reclaim his trusts or their proceeds. And the court cites with approval Cragie v. Hadley, supra, and numerous other authorities. To the same effect, see Officer v. Officer, 127 Iowa, 347, 101 N. W. 484, and Sherwood v. Central Michigan Sav. Bank, 103 Mich. 109, 61 N. W. 352.

In Iowa many authorities sustain the right of the appellant to recover. The latest to which our attention has been called is Whitcomb v. Carpenter, 134 Iowa, 227, 10 L.R.A.(N.S.) 928, 111 N. W. 825, in which the facts are identical with those in the case at bar. It was held that the purchaser of a draft on the insolvency of the banker was entitled to a preference for the amount of his claim, and that the maker of a note, who had paid money to the bank on the note made payable to the banker, who had failed to make a proper indorsement but still held

the note, or failed to turn the payment over to the person holding it, and mingled the money with the funds of his bank, was a trustee; and that the maker was entitled, on the insolvency of the banker, to a preference for the amount paid; and that the fact that the assets which passed into hands of the assignee were less than those which the banker had on hand when he wrongfully obtained the money and mingled it with his own funds did not overcome the presumption that the money passed into the hands of the assignee. See also Hanson v. Roush, 139 Iowa, 58, 116 N. W. 1061. Anheuser-Busch Brewing Asso. v. Morris, 36 Neb. 31, 53 N. W. 1037, holds that where a bank collects money for another, it holds it as a trustee of the owner, and that on the making of an assignment the trust character still adheres to the fund in the hands of the assignee, and the owner is still entitled to a preference. In Fire & Water Comrs. v. Wilkinson, 119 Mich. 655, 44 L.R.A. 493, 78 N. W. 893, it is held that when money on hand at the time the bank closed its doors was greater than the amount received in a certain fund, in the absence of proof to the contrary, it will be presumed that the amount of cash on hand, to the amount deposited in cash from such fund, was the trust fund. See also Hyland v. Roe, 111 Wis. 361, 87 Am. St. Rep. 873, 87 N. W. 252, holding that where a deposit was received by an insolvent bank, receipt of which is a penal offense, it does not have to be identified to enable the depositor to recover the fund. In Anderson v. Pacific Bank, 112 Cal. 598, 32 L.R.A. 479, 53 Am. St. Rep. 228, 44 Pac. 1063, it was held that money deposited in a bank to secure it from loss for furnishing bail, and commingled with the general funds of the bank, could be recovered; and that the depositor on the insolvency of the bank was not limited to the general rights of a creditor, but could recover the entire amount deposited out of the assets of the bank. In People v. City Bank, 96 N. Y. 32, we find a case where the bank had discounted notes for a firm, a depositor. Such firm wished to anticipate payment, and gave to the bank checks for the amount of the notes. These checks were charged in the firm account and entries made in the bank books that the notes were paid. The firm when giving these checks supposed that the bank held the notes, but they had been previously sold by it. Before the notes fell due, the bank failed, and a receiver was duly appointed of its assets. It was held that the transaction between the bank and the firm was not in their relation of debtor and creditor, nor of

bank and depositor, but that a trust was created, the violation of which constituted a fraud by which the bank could not profit; and that an order requiring the receiver to pay the notes out of funds in his hands was proper. See also Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21, as directly in point: and First Nat. Bank v. Hummel, 14 Colo. 259, 8 L.R.A. 788, 20 Am. St. Rep. 257, 23 Pac. 986.

The judgment of the trial court was erroneous, and we hold that the appellant in this case is entitled to preference, as indicated, and, if necessary, may participate with general creditors in the general assets. See Kimmel v. Dickson, 5 S. D. 221, 25 L.R.A. 309, 49 Am. St. Rep. 869, 58 N. W. 561; Eureka v. Farmers' Bank, 88 Iowa, 194, 55 N. W. 342; also Plano Mfg. Co. v. Auld, supra.

The rights of other claimants to preference are not before us, hence appellant's rights relative to them are not determined. Although the procedure in this case is not questioned, we deem it proper to add that this court is satisfied that the ends of justice would be promoted in matters of this nature by an intervention by the claimant in the main action. In such case the rights of all parties as to each other could be determined and much litigation avoided.

BRUCE, J., did not participate.