BANK OF CRAB ORCHARD, APPELLANT, V. R. G. MYERS, APPELLEE.

FILED JULY 3, 1930. No. 27304.

C. M. Skiles and Jay C. Moore, for appellant.

M. C. Radke and F. C. Radke, contra.

Heard before ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOOD, J.

This is an action on promissory notes. Defendant admitted the execution of the notes and the indebtedness thereby evidenced, and alleged that he was entitled to a set-off by reason of a deposit he had made in the Bank of Crab Orchard in his capacity as an administrator. The trial court allowed the set-off and rendered judgment for plaintiff for the excess above the set-off. Plaintiff has appealed.

Without conflict the record shows the following facts: Prior to the 15th of August, 1928, defendant was indebted to the Bank of Crab Orchard on several promissory notes, aggregating more than $3,000. Defendant, as administrator of the estate of Isaac S. Platt, deceased, deposited in the plaintiff bank to his credit as administrator funds of the

estate aggregating more than $5,000. The amount of this deposit was reduced by checks drawn thereon so that on October 11, 1928, there was a balance in the account of $3,680.65. On December 10, 1928, the bank became insolvent and was later placed in the hands of a receiver. As administrator, defendant filed a claim for, and there was allowed to him in his representative capacity, the amount of the balance of his deposit, and it was adjudged to be a preferred claim. In June, 1929, a dividend of $736.13 was paid upon the claim, reducing the principal amount of the estate's claim to the sum of $2,944.52. This dividend was by the defendant turned over to the county court as a part of his decedent's estate. On March 30, 1929, this action was commenced by the bank, and, upon the appointment of a receiver, was revived in his name. On April 29, 1929, defendant answered by way of a general denial. On August 23, 1929, defendant, as administrator, filed a report in the county court wherein he recited that it was impossible for him to realize on the funds belonging to said estate that were deposited in the Bank of Crab Orchard, and that only a small amount could be realized from the claim allowed against the bank, further stating:

"Therefore, in order to settle and adjust this matter completely, I have concluded to advance the funds that are due the estate of said Isaac S. Platt, deceased, out of my own individual fund, and as there might in the future be something realized from this deposit in the Bank of Crab Orchard of Crab Orchard, Nebraska, now in the hands of the receivers, I respectfully request that the court order that I, as administrator of said estate, assign to myself as an individual any future payments that might be procured or realized from said deposit to reimburse me for the amount that I now advance out of my own individual fund.

"Total Amount paid into Court this day,

"Private Fund_____$3,043.11"

This report was signed by defendant. On the same day the county court entered an order which, *inter alia*, contained the following:

"That said administrator has so far been unable to realize on the deposit of the funds in the Bank of Crab Orchard by him as administrator of said estate, and that he is now willing and does on this day pay into court his individual funds to the full amount that is due from said Bank of Crab Orchard to said estate and requests that any interest or dividends that might in the future be realized on said deposit in the Bank of Crab Orchard due said estate be assigned to him as an individual to reimburse him for the money that he at this time put up out of his individual fund in the settlement of this estate.

"That such a settlement would be for the best interests of said estate * * * and that all future funds realized on the deposit in the Bank of Crab Orchard of Crab Orchard, Nebraska, now in the hands of the receivers, be assigned to him (R. G. Myers) as his individual property in order to reimburse him for funds advanced individually to make this settlement."

The order further recited that upon the filing of vouchers, showing that he had complied with the order of distribution, the amount due from the Bank of Crab Orchard to the estate of Isaac S. Platt, deceased, "will be assigned to him as his absolute property individually."

Defendant's original answer to the petition was a general denial. The amended answer, in which he claims a set-off, was filed after the county court ordered the assignment of the estate's claim to him as an individual.

Defendant as an individual and defendant as administrator of Platt, deceased, are, in law and in fact, distinct persons. The funds of the estate when deposited in the bank were not the property of defendant as an individual, but remained the property of the estate which he represented. The bank could not have appropriated the deposit to pay or apply on defendant's past-due obligations to it. Defendant and the bank each recognized this fact; the defendant by filing, as administrator, claim for the deposit and procuring its allowance in favor of the estate which he represented and by receiving a dividend thereon and turning the dividend over to the county court, to apply on the

payment of claims allowed against the estate of his decedent; the receiver, on his part, by permitting the claim to be allowed in favor of the estate and paying a dividend thereon, instead of applying it on defendant's past-due obligations to the bank. Defendant did not become individually the owner of the claim represented by the deposit until the 23d of August, 1929.

Set-off as a defense or counter-claim was not, at common law, available to a defendant, but section 8616, Comp. St. 1922, gives to him this right. By section 8620, the right is limited to actions founded on contract, and the set-off is limited to a cause of action arising upon contract or ascertained by the decision of the court. In states having statutes similar to our own it is generally held that mutuality is essential to the validity of a set-off; that is, it must be due to and from the same person and in the same capacity. The word "set-off" in fact implies reciprocal demands existing between the same persons, in the same capacity, at the same time. *Proctor v. Cole*, 104 Ind. 373; *Stokes v. Stokes*, 62 S. Car. 346; *Murray v. Toland*, 3 Johns. Ch. (N. Y.) 569, 573; *Stadler v. First Nat. Bank*, 22 Mont. 190; *Western Coal & Mining Co. v. Hollenbeck*, 72 Ark. 44; *Emerson-Brantingham Co. v. Brennan*, 35 N. Dak. 94. This court has followed the general rule, at least to the extent of holding that a set-off to be available must be a cause of action in favor of the defendant which he could have maintained against the plaintiff at the time plaintiff's action was begun.

In *Simpson v. Jennings*, 15 Neb. 671, it was held: "A claim on the part of a defendant, which he will be entitled to set off against the claim of a plaintiff against him, must be one upon which he could, at the date of the commencement of the suit, have maintained an action on his part against the plaintiff." This same rule was followed in *Shabata v. Johnston*, 53 Neb. 12, and in *Citizens State Bank v. Worden*, 95 Neb. 53.

Defendant argues that, since he, as administrator, had reported to the county court that he had on hand these funds which were deposited in the bank, that was equivalent

to charging himself with the funds and operated to make him the owner thereof, and, further, that he had a personal interest in the deposit, because of the fact that, as administrator, he was under bond to account for the property of the decedent which had come into his possession.

An administrator might have the possession of real estate belonging to his decedent, but such fact would not make the property his. The deposit made by him as administrator did not belong to him in his individual capacity, and if he had attempted to pay out of such funds, his individual obligation to the bank, or any individual obligation to any one else, and the bank had knowledge of it, the bank would be required to restore the amount and to account for it to the estate of the decedent. It is generally the rule that an administrator or executor is not liable for funds of his decedent which he deposits in a bank and which are lost because of the failure of the bank, unless the administrator or executor was guilty of negligence in making the selection of the depository.

In *Harding v. Canfield,* 73 Minn. 244, it was held: "The test of the liability of an executor for the loss of trust funds deposited in a bank which failed is whether he honestly exercised in the premises that degree of care which men of common prudence ordinarily exercise in their own affairs."

In *Officer v. Officer,* 120 Ia. 389, it was held: "An executor may rightfully deposit trust funds to the account of the estate in a solvent bank."

In *In re Curtis' Estate,* 162 Mich. 47, it was held: "An administrator, in the matter of selecting a depository for the funds of an estate, is required to use the care which an ordinarily prudent person would use, and to deposit trust funds in his trust capacity, not as an individual."

In the instant case, there is no showing, nor an attempt to show, that the defendant was guilty of any negligence or want of due care in the selection of the depository; nor that the bank was insolvent at the time the deposits were made. There is nothing in the record from which it can be inferred that the defendant ever became liable to the estate

for the moneys by him deposited in the plaintiff bank until, by his voluntary act, he took an assignment of the claim.

From the record it seems perfectly clear that at the time this action was commenced defendant did not, individually, have a claim against the bank on which he could have maintained an independent action; not until August 23, 1929, did he become the individual owner of the claim which he attempts to use as a set-off, and this was several months after the instant action was begun. Under the rules heretofore announced, the set-off claimed by defendant was not available to him in this action.

It follows that the district court erred. The judgment is reversed and the cause remanded, with directions to enter judgment for the plaintiff for the full amount of its demands.

REVERSED.

ROSE, J., dissenting.

Defendant as administrator of the estate of Isaac S. Platt, deceased, had $3,680.65 on deposit in the Bank of Crab Orchard when it was closed on account of insolvency December 10, 1928. Consequently he could not withdraw the deposit and pay the proceeds to the persons entitled to them. Instead of allowing the Platt estate to lose a portion of the money entrusted to him as administrator, he remained loyal to his trust, preferring to risk an individual loss rather than allow it to fall upon the innocent persons for whom he acted as fiduciary. In his individual capacity, therefore, he paid the beneficiaries of the trust the full amount of his obligations to them as administrator and took in his own name an assignment of their deposit. The county court adjudicated this assignment to be a valid transaction. The insolvent bank then owed defendant as an individual the remainder of the deposit belonging to the Platt estate, after paying a dividend of $736.13. Though the insolvent bank is still owing defendant $2,944.52 on his unpaid deposit, it is demanding from him in this action at law $3,059.25 on his promissory notes in suit, without allowing him credit for any part of its unpaid indebtedness to him. The effect of the decision is to deprive defendant of his unpaid deposit

to the extent of $2,944.52. Under the decision he loses the deposit the insolvent bank owes him and in addition is required to pay the insolvent bank the full amount of his notes, though it owes the Platt estate nothing and all interested parties are before the court.

In my judgment the answer to the petition states facts constituting an equitable set-off to the extent of $2,944.52— a defense established by undisputed evidence.

The opinion of the majority disallows the equitable set-off on the grounds that defendant in his individual right did not own the deposit of the Platt estate when plaintiff sued him at law on his notes; that mutuality of demands essential to a set-off is not shown; that an administrator, in absence of negligence, is not liable to the estate for the loss of funds deposited in a bank. These holdings are in harmony with general rules created by statute and with technical principles enforced in courts of law. They do not apply to the peculiar facts constituting the equitable set-off pleaded in the answer and established by the undisputed evidence.

The district court in allowing the equitable set-off pleaded by defendant exercised higher authority than legislative set-off or principles technically enforced in courts of law. To prevent the injustice of such general laws in unusual instances the people in the exercise of sovereign power said in their Constitution:

"The district courts shall have both chancery and common law jurisdiction." Const. art. V, sec. 9.

This equitable jurisdiction is beyond the power of the legislature to limit or control. *Lacey v. Zeigler,* 98 Neb. 380. The common law is likewise futile for that purpose. The constitutional provision is self-executing. *Matteson v. Creighton University,* 105 Neb. 219. A proper exercise of chancery jurisdiction in exceptional cases may require a court of equity to depart from the strict terms of the statutory set-off and from the exacting rules enforced in courts of law.

Unliquidated claims for damages are not involved in the present controversy. There is no dispute over the exact amount each claimant owes the other. The amount of each

claim is definitely shown. In the original contracts each relied on the solvency and integrity of the other. Defendant as administrator trusted plaintiff with a deposit. Plaintiff, as banker, trusted defendant for the purposes of loans evidenced by his notes. In both personal and representative capacities, defendant was interested morally and financially in the deposit. Under the assignment approved by the county court defendant personally acquired the estate's rights to the deposit. In equity insolvency does not stand on a better footing than solvency and integrity. While a court of equity follows the same general rules as a court of law in considering a plea for a set-off, and while there must generally be mutual debts to authorize a set-off, there are exceptions to these general rules. Exceptions were recognized by Chancellor Kent in *Duncan v. Lyon,* 3 Johns. Ch. (N. Y.) 351. Special circumstances may create an equity calling for the allowance of a set-off not grantable in a court of law. *Hughes v. Trahern,* 64 Ill. 48, wherein the court said:

"At law there can be no set-off except as to mutual debts between parties to the record, but the doctrine is that a court of equity, in cases of insolvency, will regard the real parties in interest, and allow a set-off of demands in reality mutual, although prosecuted in the name of others nominally interested."

To give effect to a clear equity and to prevent irremedial injustice a set-off may be allowed, though the debts are not mutual. *Vulliamy v. Noble,* 3 Mer. Eng. Ch. 592, 620; *Brewer v. Norcross,* 17 N. J. Eq. 219.

The equity of defendant herein is perfectly clear. He did not lose his equitable right to a set-off by the insolvency of plaintiff or by his consequent failure, before he was sued, to acquire as an individual his deposit as administrator. His set-off was pleaded in his answer and plaintiff had timely notice of it. In my view of the facts and of the rules of equity and justice, the district court properly allowed the set-off.