STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. STATE BANK OF BELVIDERE, APPELLANT: JOE M. BURBACH ET AL., APPELLEES.

FILED MARCH 18, 1932. No. 28150.

*F. C. Radke, Barlow Nye* and *W. A. Crossland,* for appellant.

*W. C. Weiss, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

The State Bank of Belvidere was taken over by the department of trade and commerce on or about September 21, 1929, and thereafter, namely, on April 12, following, the bank was declared insolvent and a receiver was appointed by the district court for Thayer county to take charge of its affairs. And on July 30 of the same year, the court allowed certain claims of Joe M. Burbach and Joe Wiedel as preferred claims that were entitled to payment from the assets of the failed bank and the depositors' final settlement fund on the same basis as that of claims of depositors and holders of exchange therein. The interveners objected to the classification so made, and, upon trial, the court sustained their contention and decreed that the claims of the interveners should be allowed as trust funds payable in full and prior to the claims of depositors and holders of exchange. The receiver has appealed.

In respect of Burbach's claim, the parties stipulated that he was indebted to the Northwestern Mutual Life

Insurance Company of Milwaukee, and that, on or about September 17, 1929, Burbach purchased a draft for $504.20 from the Belvidere bank, payable to the insurance company. The draft was drawn on the First National Bank of St. Joseph, Missouri, and was paid for by a check in favor of the cashier of the Belvidere bank. In due course the draft was returned to the St. Joseph bank, but payment thereon was refused on the ground that the Belvidere bank was then in the hands of a receiver.

It was also stipulated that Wiedel purchased a draft from the Belvidere bank, on or about September 21, 1929, in the sum of $163, payable to the Securities Investment Corporation of Omaha, and also drawn on the St. Joseph bank, the draft being paid for by Wiedel in cash or its equivalent. In due course this draft was presented to the St. Joseph bank for payment, after the Belvidere bank came into the hands of a receiver, but payment thereon was refused. Subsequently the draft was returned and Wiedel filed his claim against the Belvidere bank.

The parties also stipulated that neither Burbach nor Wiedel was the owner of an account in the Belvidere bank and that the bank was not indebted to either of them except in the amounts of the drafts in question here. And it was also stipulated that, at the time the bank was closed, it had cash on hand and credit with its correspondent banks in a sum greater than the amounts of the drafts.

The receiver contends that the interveners are merely holders of exchange and purchasers of the bank's credit. We agree with counsel. We have held that, in order to create a deposit which will be protected by the guaranty law, it is essential that money or the equivalent of money shall, in intention and in effect, be placed in the bank or at its disposal under circumstances which are in accord with the specific limitations of the bank guaranty law. *State v. Farmers State Bank*, 111 Neb. 117. And we have held that a bank draft, drawn upon another bank

wherein the drawer has sufficient funds to cover it, may be the equivalent of money sufficient to bring the draft within the protection of the depositors' guaranty fund. *State v. First State Bank,* 117 Neb. ·370. And while the holder of a bank draft comes within the protection of the depositors' final settlement fund, we do not think the claims of the interveners should be allowed as trust funds payable in full and prior to the claims of depositors and holders of exchange. The amounts of the drafts in question were not set aside for a special or specific purpose and the elements of a trust are entirely lacking.

In some jurisdictions the rule has been stated in this manner: "The purchaser of a bank draft, a cashier's check or a certified check becomes a general creditor of the bank and is not entitled to a preference over other creditors upon the bank's becoming insolvent." *Standard Oil Co. v. Veigel,* 174 Minn. 500. "The purchase of a bank draft creates the relation of debtor and creditor between the bank and the purchaser, and the holder has no preferred claim over other general creditors of the bank." 3 Michie, Banks and Banking (Perm. ed.) sec. 207, p. 316. And in *Leach v. Exchange State Bank,* 203 Ia. 790, the court held: "The purchase of a draft on a drawee which has ample funds of the drawer's is but the purchase of the credit of the drawer. In other words, the purchaser of such a draft voluntarily makes himself one of the *general* creditors of the drawer." To substantially the same effect is *Leach v. Battle Creek Savings Bank,* 202 Ia. 875. And in *Clark v. Bank,* 72 Kan. 1, it was held that, where the bank there failed and passed into the hands of a receiver, after the issuance of a draft upon a correspondent bank in which it had funds on deposit, and where the drawee had notice of such receivership proceedings before the draft was presented for payment, the title passed to the receiver, and that the holder of the draft, in the absence of any special circumstances, was entitled to no priority over other creditors of the failed bank. See, also, *Spiroplos v. Scandinavian-American*

*Bank,* 116 Wash. 491; *Grammel v. Carmer,* 55 Mich. 201; *Legniti v. Mechanics & Metals Nat. Bank,* 230 N. Y. 415.

We conclude that the interveners, in purchasing the drafts in question, were purchasers of the bank's credit and holders of exchange, and, as such, they are entitled to share *pro rata* with depositors and other holders of exchange in the assets of the failed state bank and in the depositors' final settlement fund, but, in the absence of special circumstances, they are not entitled to have their claims allowed as trust funds. And the former rule, that a bank check or a draft is an assignment *pro tanto* of the fund in the drawee bank, having been changed by statute (Comp. St. 1929, sec. 62-1606), the decisions in *Fonner v. Smith,* 31 Neb. 107, *Columbia Nat. Bank v. German Nat. Bank,* 56 Neb. 803, and *Falls City State Bank v. Wehrli,* 68 Neb. 75, are no longer applicable.

The judgment is

REVERSED.