PRICE, Respondent, vs. HERREID, Acting Commissioner of Banking, Appellant.

*November 11, 1932—February 7, 1933.*

*George A. Affeldt* of Milwaukee, for the appellant.

For the respondent there was a brief by *Allen & Jorgensen* and *William H. Churchill,* attorneys, and *Harry J. Allen* of counsel, all of Milwaukee, and oral argument by *Harry J. Allen* and *Margaret E. Jorgensen.*

The following opinion was filed December 6, 1932:

OWEN, J.   The plaintiff is a lawyer residing in Milwaukee.   For some time prior to the 16th day of June, 1931, he had been acting as the attorney for Lewis & Leidersdorf Company in the matter of the purchase by Lewis & Leiders-

dorf Company of a drug store, located in Waukesha, owned by one John Swift, and operated under the name of Broadway Drug Shop. In the course of the negotiations, in compliance with the Bulk Sales Law, Swift made an affidavit setting forth the names of his creditors and the amount due to each. The plaintiff, acting for his client Lewis & Leidersdorf Company, and George Aussem, an attorney, acting for Swift, negotiated with these creditors, and had arrived at the amount which each creditor would take in settlement of his claim against Swift. When this was done, Lewis & Leidersdorf Company, on the 16th day of June, 1931, delivered their check to Price for the sum of $5,899.34. This constituted the purchase price of the drug store and was to be devoted to the payment of the claims of Swift's creditors.

The plaintiff banked at the Franklin State Bank. Upon receiving the check he called up Aussem and he and Aussem repaired to the Franklin State Bank with the check. Upon arriving at the bank Price proceeded to make out a deposit slip, but did not enter thereon the items which he proposed to deposit. The deposit slip was introduced in evidence, and indicates that it was filled out by Price only so far as his name and the date were concerned. Price says that when he had proceeded thus far in the making out of the deposit slip, he handed the deposit slip, together with the check, and two other small items which he intended to deposit, through the receiving teller's window, and stated that he wanted cash on the Leidersdorf check. The teller then called up the bank upon which the check was drawn, and was informed that there were not sufficient funds to the credit of the Leidersdorf Company to meet the check. Thereupon the teller told Price that the bank could not cash the check. Price insisted that he must have the cash because he wanted to close a deal. The teller then referred him to Mr. Maas, the assistant cashier. He then went to see Mr. Maas, whom he told that the Leidersdorf Company was a very solvent con-

cern and that there would be no question about the payment of the check when it was presented. Maas told him that the only thing the Franklin State Bank could do would be to take the check for collection, and "when we collect we will call you up and you can come over and get the money." Price then went back to the teller and told him what Maas had said. The teller took the check, and the plaintiff said "You take this for collection, then, and just as soon as you get the money call me up and I will come over and get it." The check was left at the bank, according to the plaintiff's testimony, under this arrangement. The plaintiff's testimony in this respect is corroborated by Mr. Aussem and, to some extent, by the assistant cashier, and teller, of the bank.

The check was sent through the clearing house the next morning, and was paid by the bank upon which it was drawn early in the forenoon of the 17th of June.

There is a controversy in the evidence as to whether the bank informed the plaintiff when the check was paid, but, whether the plaintiff was or was not so informed, he did not appear at the bank to get the cash on the 17th, and on the morning of the 18th the bank closed, and was, by resolution of the board of directors, turned over to the banking commissioner for liquidation.

The court found "that at the time that the plaintiff intrusted the item aforesaid to the Franklin State Bank he entered into an express contract with the employees and officers of the Franklin State Bank who conducted the transaction on its behalf, to the effect that the said item was to be collected and the cash amount thereof obtained for the plaintiff at the earliest possible moment," and, as a conclusion of law, "that by virtue of the transaction the Franklin State Bank became an agent collecting bank for the plaintiff, and that the plaintiff was entitled to judgment for the full amount of the check together with interest thereon from the 17th day of June, 1931, together with the costs and disbursements of this action."

While there is a presumption that a deposit made in a bank is a general deposit, the finding of the court is to the effect that this was a special deposit. Under this finding, the check was left in the bank for the purpose of collection and not for the purpose of transferring title to the check to the Franklin State Bank and under circumstances which did not constitute the Franklin State Bank a creditor of the plaintiff. *In re Warren's Bank,* 209 Wis. 121, 244 N. W. 594, and cases there cited; sec. 220.15, Stats. The principal controversy here is whether this finding is supported by the evidence. This requires an examination of the evidence for the purpose of ascertaining whether this finding of the trial court is contrary to the clear preponderance or the great weight of the evidence, as the finding must be sustained unless it so appears. See cases cited in 1 Callaghan's Digest, p. 306.

The evidence relied on by the appellant to overcome the oral testimony in the case concerning what happened at the bank when the plaintiff left the check there on the 16th of June is based upon the actions and conduct of the plaintiff both before and after such date, it being the contention of the appellant that such course of conduct indicates conclusively that the plaintiff left the check with the bank for the purpose of deposit and not exclusively at least for the purpose of collection.

As already stated, the plaintiff and Aussem had, prior to the 16th day of June, reached an agreement with the various creditors of Swift by which the respective amounts which the respective creditors would receive in full satisfaction of their claims against Swift had been determined and agreed upon. It also appears that prior to this time Aussem had taken Price's check book to his office and had drawn checks payable to the various creditors for the amounts coming to them pursuant to such agreement and determination. After drawing these checks, the check book was returned to the plaintiff's office, the checks to be signed by him and sent out

to the various creditors when he should be supplied with the necessary funds by the Leidersdorf Company to meet the amounts of these checks.

This is most persuasive evidence that Price did not intend at that time to pay off the various creditors in cash, but that both he and Aussem had intended to conduct the transaction in the very natural and usual way of sending out checks in payment of the claims of the various creditors. It is not denied by either Price or Aussem that this was their purpose when these checks were drawn about the 15th day of June. It is claimed, however, that they changed their minds in this respect, and concluded that they might save some money for Swift, which could be applied on an account which Swift owed Aussem, by tendering the cash personally to the various creditors in the hope that, by exhibiting the cash to them, they could secure from them, or some of them, a still further reduction from the amounts which they had already agreed to accept in payment of their claims. If this be true, it furnishes a plausible reason for the desire on the part of Price to secure the cash. The fact that they had originally contemplated the payment of these creditors by plaintiff's checks created no obstacle to a change in the manner of closing the transaction. They could have adopted a change of policy if they saw fit, but the whole question here is whether there was such a change of policy.

From an examination of the list of creditors submitted by Price, we find that they were forty-five in number, that twenty of them lived in Milwaukee or Waukesha, and that twenty-five of them, to whom there was about $3,500 owing, lived in other places. Thus, nine were in Chicago, three in New York City, three in St. Louis, two in St. Joseph, Missouri, two in Cincinnati, Ohio, one in Racine, one in Orange, New Jersey, one in Memphis, Tennessee, one in Quincy, Illinois, one in Fremont, Ohio, and one in Madison. When we

reflect that the plaintiff's contention is that he desired all of the cash upon this check for the purpose of tendering payment in cash personally to all of the creditors, and that they were scattered from St. Joseph, Missouri, to New York City, a doubt arises as to whether the plaintiff and Aussem had any such program in mind. It would not be altogether improbable that they might have contemplated calling on certain of the creditors in Milwaukee, or even Waukesha, with a view of securing further concessions upon the claims. But whether they contemplated doing so in every instance even as to those creditors might well be doubted, because the entire amount of some of the claims was insufficient to pay for the time and expense of making the call even though a remittance of the entire amount might have been secured. However, it is hardly conceivable that they intended to call on all of the creditors living at great distances from Milwaukee. Now unless they intended to call on all of the creditors, they did not need all of the proceeds of this check, and the improbability of such a plan renders the contention of the plaintiff that they went to the bank with the intention of procuring the entire proceeds of this check in cash, difficult of belief. These are considerations, however, based upon conduct prior to the presentation of the check at the Franklin State Bank. But there is conduct on the part of the plaintiff subsequent to this occasion which negatives his present construction of that transaction.

On the 22d day of June, 1931, four days after the bank was taken over by the commissioner of banking, the plaintiff filed with the commissioner of banking a general claim for the total amount of his checking account, which he claimed to be $6,718.47. This account included the check in question. On or about July 28, 1931, he filed with the banking commissioner a preferred claim for the amount of the check, which was denied by the commissioner under date of Au-

gust 1, 1931. This indicates that at the time of the filing of the general claim he did not consider that he had a preferred claim against the bank for the amount of this check.

However, we find a letter in the record written to one of the creditors, the Kremer Sign Shop, Waukesha, Wisconsin, in which he says: "Due to the unfortunate situation of the Franklin State Bank closing its doors with all of my personal money in it, besides the fund for the creditors of John Swift, which was deposited on June 16th, and the bank closed on the night of June 17th, checks issued have not been honored, and you have a valueless check in your possession." He then refers to the fact that the creditors were notified that they would get a check for the amount of their claim, and proceeds to say: "The money was thereupon placed in the Franklin State Bank of Milwaukee, Wisconsin, by check on the First Wisconsin National Bank of Milwaukee, Wisconsin, and the proportionate amount due each creditor was sent to him by check. The check was deposited, and on the night of June 17th, two days after the check was deposited, the bank failed, as you know, and was closed by the banking commissioner." He then states that he has been able to borrow fifty per cent. of the amount of that fund, due to action by the clearing house, and he incloses his check for fifty per cent. of the amount of their claim. It should also be stated that the deposit slip, which was partially made out by the plaintiff on June 17th, was filled out by the teller, who listed three items, among which was this check, and that the books of the bank, as closed that night, showed the plaintiff's account credited with the amount of the check in question. It is realized that this transaction within the bank is not binding on the plaintiff, and does not in and of itself show that he made a general deposit of the check, but that fact is entitled to some weight as showing the interpretation of the transaction by the bank.

It appears that the Leidersdorf check was cashed by the bank upon which it was drawn about 10:15 a. m. on the

17th and the Franklin State Bank notified. It is claimed that the Franklin State Bank notified plaintiff that the check had been honored, but he denies this. However, the fact is that the checks prepared in plaintiff's check book were sent out to the various creditors. Plaintiff claims that this was not done until after the bank closed, and that it was done at that time for the purpose of appeasing the creditors and to secure a little time in which to make other arrangements. He felt that by doing this he would indicate to the creditors that the negotiations were being conducted in good faith, and that the course which the checks would naturally take would give him a few days in which to make his adjustments. If the checks were actually sent out after the bank closed, and for the purpose indicated, the action is without significance. However, there is testimony in the record showing that at least three creditors, two in Waukesha and one in Milwaukee, received these checks, either on the afternoon of the 17th or on the morning of the 18th, in which cases the checks must have been mailed before the bank closed and indicates that the plaintiff proceeded with the mailing of the checks before he knew of the closing of the bank. This also has a bearing upon the question of whether he knew that the check had been honored when presented to the bank on which it was drawn. In view of the fact that this check was honored early in the morning of the 17th, and that the plaintiff was evidently solicitous concerning the matter of paying all the creditors, it seems a little curious if he made no more effort than he says he did to ascertain whether the check had been honored during the day of the 17th.

There is another circumstance which is entitled to consideration. According to plaintiff's own testimony, it was his desire to have the amount of this check revealed to the credit of his checking account upon the books of the bank, and thus swell his deposits, which indicates that when he went to the bank he entertained the thought that the amount of this check would be credited on his account.

To recapitulate: we have a situation where it was without doubt the intention of Mr. Price, a day or two before this transaction, to deposit this check to his credit in his own bank, and to send his own checks to the various creditors in payment of their claims against Swift. He secured a check for the amount from his client, took it to his bank and, due to whatever transaction occurred there, received credit for the amount of his check in his checking account. This check was handled by the bank the same as all other checks received for deposit on account, while checks left there for purposes of collection were not handled through the clearing house, but were sent direct to the bank upon which they were drawn. Price testifies that he demanded the cash from the bank, and says that the reason he demanded the cash was that he wanted to interview creditors in person and make them a cash tender with a view of a further reduction in the amounts which they agreed to accept. This in the face of the fact that the creditors were widely scattered, and twenty-five of them, to whom there was in the neighborhood of $3,500 owing, lived at great distances from the city of Milwaukee. Upon the closing of the bank he files a general claim for the amount of this check and, five days after the bank closes, writes to one of the creditors indicating that this deposit was made to his account.

This deposit was, presumptively, a general deposit. It was a general deposit unless made pursuant to a special contract. There is oral testimony to indicate that a special contract was made. It conclusively appears, however, that a day or two before the deposit was made a special deposit was not intended. The bank did not deal with the deposit as a special deposit is usually handled. The reasons assigned for making the deposit a special rather than a general deposit are highly improbable. The plaintiff by his acts construed the deposit as a general deposit four days after the bank closed, when he filed his general claim, and he still construed it as a general

deposit when he wrote his letter above mentioned to the Kremer Sign Shop.

There is nothing in the evidence to indicate a special contract when the deposit was made, except the oral testimony of plaintiff and Aussem, supported to some extent by two bank employees. This parol testimony is contradicted by the actions of every one connected with the transaction. It is contradicted by the actions of plaintiff and Aussem prior to the transaction; it is contradicted by the actions of the bank in giving the plaintiff credit on his checking account for the amount of his check, and by sending it through the clearing house instead of directly to the bank. It is contradicted by the action of the plaintiff in filing a general claim with the banking commissioner, and it is contradicted by the letter above referred to.

These various actions, and the conduct of all having to do with the transaction, indubitably reveal the intention of the plaintiff when he left the check at the bank and the purpose with which he left it there. These actions, which stand as monuments along the way, easily constitute a preponderance of the evidence which must be thrown into the scales, and indicate that the finding of the lower court is against the clear preponderance of the evidence. The judgment must be reversed.

This renders it unnecessary to consider the further question debated, as to whether interest and costs were properly allowed to the plaintiff.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the defendant dismissing the complaint.

A motion for a rehearing was denied, with $25 costs, on February 7, 1933.