CONTINENTAL NATIONAL BANK OF LINCOLN, APPELLEE, v. MARGARET WILKINSON ET AL., APPELLANTS.

FILED APRIL 7, 1933. No. 28516.

*Stout & Baird,* for appellants.

*Beghtol & Foe* and *J. Lee Rankin, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

The plaintiff brought suit in equity to secure judgment on defendants' promissory note of $11,500, and to foreclose and sell collateral deposited therewith. A counterclaim, asking judgment for $17,464, was dismissed by the district court. Judgment entered for plaintiff. Defendants separately ask a new trial, and appeal to this court from the overruling of such motions.

This was a suit brought against Rees Wilkinson and his wife, Margaret, upon a promissory note signed by both of them, and to foreclose and sell the collateral put up with the note. The original note was for $25,000, but payments had been made thereon by the defendants, and the final renewal note sued upon is for $11,500, dated October 11, 1931, and due November 11, 1931, and bearing 10 per cent. interest from that date.

In the answer and cross-petition, Rees Wilkinson admits the execution of the note, and sets up a counterclaim for loss on a bond transaction of $17,464, which brings up for examination a series of dealings between the parties hereto. It appears that the original deal was between Rees Wilkinson, who was president of the Indemnity Company of America, and William Seelenfreund, who was at that time the president of the Continental State Bank, now the plaintiff, the Continental National Bank.

The negotiations for the purchase of approximately $25,000 worth of bonds, to place in the reserve of the Indemnity Company of America, lasted for several months. Mr. Wilkinson contends that Mr. Seelenfreund understood exactly the purpose of buying the bonds, and

that it was agreed between them that the bank would, at any time, upon demand, repurchase the bonds, or any of them, at the price paid, less one month's interest.

Mr. Wilkinson, the managing officer of the Indemnity Company of America, contends that his acts in the purchase of the bonds to go into the reserve of that company, and the raising of the money by himself and wife to be furnished to the corporation to buy the bonds, were all one and the same transaction, but, in the manner in which this transaction was handled by William Seelenfreund for the bank, it was distinctly two entirely separate transactions, distinct and independent of each other, for Mr. Wilkinson and his wife borrowed $25,000 on their promissory note, and pledged as collateral security therefor 140 shares of stock of the National Automobile Insurance Company and 300 shares of stock in the National Old Line Life Insurance Company, together with four surplus notes of $5,000 each, issued by the Indemnity Company of America to Margaret Wilkinson, and indorsed by her, which surplus notes could only be retired by the company issuing them in a certain way, from certain designated profits.

On receipt of this $25,000 note, so secured, Mr. Seelenfreund caused to be issued to Margaret Wilkinson a cashier's check, of the same date as the note, June 30, 1928, but this check was not delivered to her, but retained by the bank. She was compelled to come to the bank and there indorse the check, which was, on the same day, July 9, 1928, deposited to the credit of the Indemnity Company of America. Then J. C. Heitkotter, treasurer of that company, gave the company's check, in the amount of $24,409.67, dated August 30, 1928, for the bonds for which Mr. Wilkinson had bargained, which bonds thereupon became a part of the reserve of that company. A report was immediately issued by that company, showing that these specific bonds were a part of its reserve, and stating that the Continental State Bank had agreed to repurchase these bonds whenever requested, a copy of

which was given to Mr. Seelenfreund. The evidence also discloses that a few of these bonds were resold to the bank, according to the strict terms of the agreement, the bank rebuying them at a loss, as the prices had further declined.

Mr. Seelenfreund retired as an officer of the bank when it was nationalized, and thereafter, when Mr. Wilkinson, on December 10, 1931, tendered back additional bonds, to be purchased on the terms set out, the officers then conducting its affairs disclaimed any knowledge of the alleged oral contract, and refused to even discuss the matter. Mr. Wilkinson claims that he paid a premium in order to secure this repurchase agreement, and that, by a decline in the value of the bonds below the purchase price, and by the refusal of the Continental National Bank to repurchase the same, he has been damaged in the sum of $17,464, for which amount he asks judgment.

The appellant claims that, as he entered into the contract for the benefit of himself and the Indemnity Company of America with the knowledge and consent of the other contracting parties, he may bring this action against the bank, as set out in his counterclaim, without joining with him the Indemnity Company of America, and cites as authority therefor section 20-304, Comp. St. 1929; *O'Shea v. North American Hotel Co.,* 109 Neb. 317; *Coe v. Nebraska Building & Investment Co.,* 110 Neb. 322; *Male v. Lafferty,* 105 Fed. 564.

On the other hand, the appellee contends that a recent decision of this court has made such a claim untenable, and refers us to the case of *Bank of Crab Orchard v. Myers,* 120 Neb. 84, in which the defendant endeavored to offset a deposit he had made in the bank as administrator of the estate when a suit was brought against him on his own promissory note. This court held that mutuality of demand was necessary to entitle a defendant to a set-off, and that the respective demands must be between the same persons and in the same capacity, and showing that an administrator was not personally liable

for the loss of funds of his decedent deposited in a bank unless he was negligent in selecting the depository.

Sections 20-812 and 20-816, Comp. St. 1929, provide the rules to follow in setting up a legal set-off. The ruling of Judge Shepherd in this case was strictly in accord with the decision in the case of *Bank of Crab Orchard v. Myers, supra,* and in the later cases this court has not changed that opinion. In *Bank of Dakota County v. Pedersen,* 121 Neb. 760, this court refused to allow a certificate of deposit, purchased by the defendant after the bank was taken over by the guaranty fund commission, to be set off against his promissory note, and again held: "'A claim on the part of a defendant, which he will be entitled to set off against the claim of a plaintiff against him, must be one upon which he could, at the date of the commencement of the suit, have maintained an action on his part against the plaintiff.' *Simpson v. Jennings,* 15 Neb. 671."

In *American Gas Construction Co. v. Lisco,* 122 Neb. 607, defendant attempted to set up a counterclaim and cross-petition on another contract made between the same parties, but different from the one sued upon by the plaintiff. It was held that the set-off did not arise out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim; that mutuality of demands is necessary to entitle a defendant to a set-off. In other states having statutes similar to the Nebraska statute, it has been held that mutuality is essential to the validity of a set-off, and that the word "set-off" itself implies reciprocal demands existing between the same persons, in the same capacity, at the same time. *Proctor v. Cole,* 104 Ind. 373.

Courts have had some difficulty in finding a wholly satisfactory definition of the term "transaction" as relating to counterclaim. It is generally agreed that it is broader in meaning than the word "contract," for it includes torts. The fact that two transactions originate at the same time and place, and even between the same

parties, as in the case at bar, is not the test, and the important question to be decided in such cases is: Did each cause of action accrue or arise out of the same transaction, that is, the same thing done? Was this transaction, sought to be counterclaimed, one that arose out of an independent contract, or were all of the dealings between the parties embraced in a single contract?

This court must, under the decisions cited herein, find that the trial court was right in dismissing the set-off of the defendant, Rees Wilkinson, for the loss, if any, upon these bonds will clearly fall upon the Indemnity Company of America, which owns the bonds.

This decision does not mean that such company may not have a cause of action, under the alleged repurchase agreement, but our holding simply goes so far as to say that, in the suit brought against the defendants upon the note signed by them, the defendant Rees Wilkinson cannot set off the demand, claim, or rights of the Indemnity Company of America as a defense in this suit. The judgment of the district court is

AFFIRMED.