STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. SOUTH OMAHA STATE BANK, APPELLANT: FRANK DEMOFF ET AL., INTERVENERS, APPELLEES.

FILED FEBRUARY 8, 1934. No. 28802.

*O'Sullivan & Southard, F. C. Radke* and *Barlow Nye,* for appellant.

*J. J. Krajicek, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and BEGLEY, District Judge.

GOSS, C. J.

The receiver appeals from the allowance of the claim of Frank Demoff and Barbara Demoff as a trust fund with priority over claims of general depositors.

The claim was based upon a cashier's check for $1,500, issued August 3, 1931, payable to the Demoffs and still held and owned by them when the bank was closed and a receiver appointed a few weeks later. They duly filed their claim asking for its allowance as a trust fund. On December 18, 1931, the receiver classified it as a valid claim, ranking it with depositors and holders of exchange, but denied it priority of payment over other creditors. Claimants were given leave to file a petition of intervention and did so, claiming a trust fund for the amount named. Issues were joined and a trial had. In the meantime the Demoffs had been paid dividends of $600. The court decreed that the whole $1,500 was impressed on the assets as a trust fund, charged them the amount paid as dividends, and, on January 3, 1933, ordered the receiver to pay them $900, prior to the payment of other claims of general depositors.

It is now settled that the mere purchase of the cashier's check from the bank, by the Demoffs, did not create a trust fund in the hands of the bank. "A check on a bank does not operate as an assignment of funds therein to the amount of the check, a former rule to the contrary having been changed by statute. Comp. St. 1929, sec. 62-1606; *State v. State Bank of Belvidere,* 122 Neb. 797. By purchasing a cashier's check, bank draft or certified

check, the purchaser usually becomes a creditor of the bank and the holder of exchange, and not the beneficiary of a trust, in absence of special circumstances creating the relation of trustee and beneficiary." *State v. Farmers & Merchants Bank*, 123 Neb. 358, citing, as precedents for the rules, *State v. State Bank of Belvidere*, 122 Neb. 797; *State v. First State Bank of Alliance*, 123 Neb. 23.

This leaves to be determined whether there were special circumstances present and proved which changed the usual relation of debtor and creditor, between the bank and the Demoffs, to that of trustee and beneficiaries.

In their brief appellees concede that the presumption, when money is deposited in a bank, favors the relationship of debtor and creditor. But they contend that the facts and circumstances "overcome the presumption, and show that this money was deposited as a bailment, or special deposit."

The testimony of the Demoffs was that they contracted to buy some vacant real estate adjoining their home. Their money was in a building and loan association, where advance notice to withdraw had to be given. They gave notice and after a month drew out $1,500 in money. The abstract did not show marketable title and there was delay. They were afraid to keep the money and so took it to the bank. Their testimony was given through an interpreter as they speak but very little English. They are said to be Bohemians.

Frank Demoff testified that he put the money in the bank, though there is other testimony from him clearly indicating that it was not money but in the form of a check. He says he dealt with Frank L. Vlach, who was vice-president and cashier of the. bank and who issued the cashier's check. This check for $1,500, dated August 3, 1931, payable to the order of Frank and Barbara Demoff, is in evidence. When he gave Vlach "the check" and got the cashier's check, he says he told Vlach he intended to use the money to buy some property and wanted to leave it ten days. Vlach cautioned him not to lose the

cashier's check. When asked if, when Vlach gave him the check, he said he would keep the money for him for eight or ten days, he answered: "Surely, I knew he would keep it for me eight or ten days."

Barbara Demoff says she was with her husband when the money was put in the bank and met Vlach that day but left it to her husband to do the talking. Her husband told Vlach he "wanted to put the money in the bank for about seven days—eight or ten days," and "He said to keep it for us * * * and he said for us to watch that check and not lose the money, because if we lose it, if we lose the check, then we lose the money." On August 3 she had gone to the office of their attorney with the money in her pocketbook. The attorney told her the abstract of title was not right and they might have to wait for it. She got "scared to keep it at home" and she and her husband took it to the bank.

Frank L. Vlach testified that the usual method of handling money that was not to become a deposit of the bank was to put it in an envelope for safe-keeping and not to mingle that money with other deposits. He testified that he does not even recall how the money came into the bank for which the cashier's check was issued; that cashier's checks were issued to the number of 15, 20 or 50 each day; that he knows the Demoffs but does not remember any conversation with them or either of them about the matter involved here; if the fund had been left with instructions to hold for a specific purpose, a cashier's check would not have been issued.

"The burden of proving the existence of a trust rests on the person asserting it, and he must prove it by clear and satisfactory evidence, having in view all the surrounding facts and circumstances and the intention of the parties." 26 R. C. L. 1203, sec. 44.

The evidence, which we believe we have faithfully abstracted, is very lacking in the elements necessary to establish a trust against the bank. Even under the testimony of appellees, there was nothing establishing an ac-

ceptance of the money as a special deposit or special fund or indicating that the bank knew the purpose or intent except that Mr. Demoff told Vlach he intended to use the fund to buy some property and wanted to leave it ten days. The conventional thing to do was to issue a cashier's check to aid one to carry out such a purpose. The statement of the intent of Demoff was merely incidental. It does not raise an agreement that the fund should become a trust and that claimants should have priority when the bank failed leaving appellees as the holders of the cashier's check. The appellees have failed to sustain the burden of proof.

It follows that the district court erred in decreeing the balance due appellees to be a trust fund. The judgment is reversed, with directions to classify and order the claim paid as a general deposit, as originally classed by the receiver.

REVERSED.