STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. SOUTH OMAHA STATE BANK, E. H. LUIKART, RECEIVER, APPELLANT: JOHN C. BARRETT, INTERVENER, APPELLEE.

FILED MAY 14, 1935. No. 29279.

*F. C. Radke, Barlow Nye* and *O'Sullivan & Southard,* for appellant.

*John C. Barrett, pro se.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and REDICK, District Judge.

GOOD, J.

In a proceeding for winding up the business affairs of the South Omaha State Bank, insolvent, John C. Barrett, as guardian of an incompetent, intervened and obtained an

order allowing a claim with the status of, and preference as, a trust fund. From such order the receiver has appealed.

August 4, 1931, intervener received for his ward a draft for $2,942.60, drawn on a New York bank and payable to himself as guardian of the incompetent. He immediately indorsed the draft as such guardian and delivered it to his wife, with instructions to take it to the bank (in which he had a personal checking account), inform its officers that the draft did not belong to him individually but represented funds of his ward; that it would be a separate account; that the county judge had ordered the disbursement of a part of the fund. Mrs. Barrett took the draft to the bank, gave this information to a receiving teller, and informed him that it was necessary for Mr. Barrett to have some of the funds immediately for payment of his ward's obligations; that he was leaving the next morning to take his ward to Ohio and would require traveler's checks for expense of the trip. The teller informed Mrs. Barrett that the traveler's checks could not be issued to Mr. Barrett until he personally came to the bank and signed them, and advised that it would be better to place the draft to the credit of Mr. Barrett in his personal account, on which he could draw for the claims ordered by the county judge. Thereupon the teller took the draft, filled out a deposit slip and placed the draft to the credit of Mr. Barrett in his personal account. The next day Mr. Barrett appeared at the bank and obtained traveler's checks for the expense of the trip with his ward to Ohio. The checks drawn against this account for the ward's debts and traveler's check were seven in number and aggregated $640.43. At least one of these checks was not drawn until August 6, 1931. All of these checks were signed by Mr. Barrett in his personal capacity, from which it appears that Mr. Barrett was fully advised that the draft had been deposited to his personal account in the bank. The bank failed and was closed on August 14, 1931. Mr. Barrett did not return from Ohio until after the bank had closed.

Mr. Barrett, as guardian, filed with the receiver a claim for the difference between the amount of the draft and the checks that had been drawn for the ward's account, and asked that it be given the status of, and preference as, a trust fund. It was classified by the receiver as a general deposit. Thereupon this proceeding was instituted.

Under our collection statute (Comp. St. 1929, sec. 62-1802), the bank was acting as agent for the collection of the draft until it was actually paid and the proceeds received by the bank. The precise date when the proceeds of the draft reached the South Omaha State Bank is not disclosed. An officer of the bank testified that the ordinary time to receive returns from a draft on New York was four or five days. In the instant case nine days had elapsed before the failure of the bank. Both parties to this action treated the matter as though the draft had been paid to the bank in the usual and ordinary course of business. For the purpose of this appeal, we must assume that the proceeds of the draft had been received by the bank prior to its failure. When the proceeds of the draft reached the South Omaha State Bank it ceased to be acting as a collection agent and held the money as a general deposit, and the relation of debtor and creditor existed between the bank and Barrett, unless there were special circumstances which would make it a special deposit or one for a specific purpose. *Montsdoca v. Highlands Bank & Trust Co.,* 85 Fla. 158; *Farmers Exchange Bank v. Farm. & Home Savings & Loan Ass'n,* 332 Mo. 1041.

Mrs. Barrett testified: "I presented this draft to him (Felix Melonis, a receiving teller) and he read it over three or four times, about John C. Barrett, Guardian, and Minerva May McConnell, Incompetent; and I said, 'Remember, Felix, this is not our own money, it shall be in a separate account, then when we return from our trip John (Mr. Barrett) is to take it up with Judge Crawford and see where to put the money.'"

We think from this testimony it is clear that it was Barrett's intention to have the draft deposited in the bank

to a separate account from his personal account. There is nothing in the evidence from which we can infer that the draft was left with the bank solely for the purpose of collection; nor that it was left as a special deposit or a deposit for a specific purpose.

Intervener seems to contend that because the money was held by him in trust, as guardian, it was likewise held by the bank, as trustee, but this does not follow. An administrator, executor or guardian occupies a fiduciary relationship, but such persons are permitted to deposit trust funds in a bank, and, when they are so deposited, the guardian or administrator is liable as a trustee. It does not follow, however, that the bank is acting as trustee for the guardian. The guardian or administrator is liable for funds lost when deposited in a bank only where he has been guilty of negligence in selecting the depository bank. *Bank of Crab Orchard v. Myers,* 120 Neb. 84; *Officer v. Officer,* 120 Ia. 389. In the latter case it was held:

"Where an executor deposits trust funds with a bank, which are subject to check, there being no agreement to return the identical deposit or to apply the same to any specific purpose, the deposit is a general one.

"Where an executor makes a general deposit of trust funds in a solvent bank, neither he nor the *cestui que trust,* in case of a failure of the bank, has any preference over other creditors, though the bank knew the character of the deposit."

In *State v. South Omaha State Bank,* 126 Neb. 46, it was held that the burden of proof, by fair and satisfactory evidence, that money in the bank is a trust fund rests on the person asserting the trust. In *State v. Citizens Bank,* 124 Neb. 717, it was held: "Before money in an insolvent bank may be recovered on the trust fund theory, claimant must show facts to prove that it was not simply a general deposit." In *Price v. Herreid,* 210 Wis. 422, it was held: "A deposit made in a bank is presumptively a general deposit."

We find nothing in the record that would warrant the

court in holding that the deposit of the draft was other than a general deposit. There is nothing to show that it was ,a special deposit, or that it was made for a specific purpose.

Intervener cites and relies upon the following cases: *Capital Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786; *State v. Bank of Commerce,* 61 Neb. 181; *Anheuser-Busch Brewing Ass'n v. Morris,* 36 Neb. 31; *State v. State Bank of Touhy,* 122 Neb. 582. We think that a careful analysis of the opinions in these cases discloses that they are not in point.

In *Capital Nat. Bank v. Coldwater Nat. Bank, supra,* the bank received a note for collection which the makers paid. The bank failed to remit to the owners. On the bank's failure, it was held, the bank, being merely a collection agent, held the fund in trust. In *State v. Bank of Commerce, supra,* a draft was delivered to the bank for collection only. Without the knowledge of the owner, the bank opened up an account and placed the draft to the credit of the owner. It was held in that case that, on failure of the bank, the owner was entitled to claim it as a trust. *Anheuser-Busch Brewing Ass'n v. Morris, supra,* presents a similar situation. In *State v. State Bank of Touhy, supra,* the bank received a check, the proceeds to be remitted to a particular person to pay a specified obligation. The bank failed to perform its duty. It was held that the check was received for a specific purpose and that the bank had no authority to treat it as a deposit. A like ruling was made in *State v. Farmers State, Bank,* 121 Neb. 532.

Intervener also cites and relies on *State v. American State Bank,* 126 Neb. 34. In that case the cashier of the bank was appointed by the district court as a trustee, and the court ordered the trustee to deposit money in the bank, of which he was cashier, for a specific purpose, to be paid out in instalments at certain specified times. It was therein held that the deposit was made for a specific purpose; that the bank accepted it, and, on its failure, the fund could be claimed as .a trust. We are of the opinion that the court went to the extreme limit in that case in sustain-

ing the claim of the deposit as a trust fund. While the cashier was, no doubt, liable as a trustee, we are now inclined to the view that it is very doubtful whether the court did not exceed the limits of propriety in holding that the bank was also a trustee. But we find nothing in the record in the instant case that would warrant the court in holding that the South Omaha State Bank held the fund, representing the proceeds of the draft, as a trust after it had performed the duty of acting as a collection agent. This transaction clearly indicates that it was the intention of the parties to create a deposit, and the relation of debtor and creditor existed as soon as the proceeds of the draft had been collected and received by the South Omaha State Bank.

We think the trial court erred in holding that intervener was entitled to a preference as a trustee. His claim was entitled to the status of a general deposit and the preference that the statute accords to unsecured deposits.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.